UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael E. GAUDIN, Defendant–
Appellant.

No. 90–30334.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 18, 1993.

Decided June 21, 1994.

Richard Hansen, David Allen, and Todd Maybrown, Allen & Hansen, Seattle, WA, for defendant-appellant.

Kathleen A. Felton, U.S. Dept. of Justice, Washington, DC and Kris A. McLean, Asst. U.S. Atty., Helena, MT, for plaintiff-appellee.

Before: WALLACE, C.J., HUG, TANG, FLETCHER, REINHARDT, BEEZER, KOZINSKI, LEAVY, RYMER, T.G. NELSON, and KLEINFELD, Circuit Judges.

Opinion by Judge HUG; Dissent by Judge KOZINSKI.

HUG, Circuit Judge:

We granted rehearing en banc in *United States v. Gaudin,* 997 F.2d 1267 (9th Cir.), *rehearing granted,* 5 F.3d 374 (1993), to de-

cide whether the element of materiality in 18 U.S.C. § 1001 is a question of fact that must be determined by the jury. We hold that it is.

Michael E. Gaudin was convicted of one count of equity skimming in violation of 12 U.S.C. § 1709-2 for failing to pay United States Housing & Urban Development/Federal Housing Administration ("HUD/FHA") insured loans, and 43 counts of making false statements on loan documents in violation of 18 U.S.C. § 1001. A panel of this court affirmed the equity skimming conviction but reversed the false statements convictions because the district court failed to submit the element of materiality to the jury. *United States v. Gaudin*, 997 F.2d 1267, 1273 (9th Cir.1993).

The Government's petition for rehearing requested that we reconsider our circuit precedent holding that materiality is an element of the offenses charged under 18 U.S.C. § 1001 that must be submitted to the jury. We affirm the opinion of the panel for the reasons therein stated. In this opinion, we discuss in more detail the reasons why we adhere to our authority that the element of materiality must be submitted to the jury.

## I.

A more comprehensive statement of the facts of this case concerning all charges is set forth in the panel opinion. The facts relevant to the issue discussed in this opinion are set forth as follows.

Gaudin became involved in purchasing and renovating rental housing during the recession of 1981–82 when demand for real estate diminished. He purchased many government repossessions, which he held in his or his company's name, and renovated them to rent or resell. Gaudin solicited friends and relatives to buy the houses from him on terms he arranged using FHA-secured loans. He guaranteed he would repurchase the house at a $1,000 profit, if they chose to sell it. In most instances, they did sell the house back to Gaudin for the $1,000 profit. In some instances, the buyer put up a cash down payment, but in most instances, the buyer deeded a percentage interest in the equity in his or her own home as the down payment.

Gaudin made all the necessary arrangements for each loan, including obtaining an appraisal of the refurbished house. Each loan was designed with the lender as an FHA-insured loan. Thus, HUD/FHA forms were utilized in the sales and loan transactions.

The Government contended that Gaudin misled the FHA because the buyers of these houses were not legitimate buyers, but rather "strawbuyers" who only served as a conduit for Gaudin to obtain the houses for himself with FHA loans. Gaudin was not charged with any crime of fraud or substantive statutory violation for obtaining the FHA loans through "strawbuyers;" instead, he was charged with making material false statements on certain FHA forms that caused the FHA to insure the loans.

Gaudin was convicted on Counts 2–17, 19–42, and 44–46. Counts 44–46 charged that the false statements were made on HUD/FHA form 92800-5, certifying an appraised value of the property securing the loan. The charge in these counts is not complex—it is simply that the amounts of the appraisals were knowingly inflated. Counts 2–17 and 19–42 involved HUD/FHA form HUD–1, which is the final settlement statement for the closure of the sales transaction. The nature of the charged false statement is more complex in these counts. A copy of the HUD–1 form involved in one of the transactions is shown in Appendix A, and is representative of the HUD–1 forms involved in all of these counts.

The HUD–1 settlement form is the type of form generally used in closing real estate sales transactions. It shows the sales price, the down payment, the loan amount, and the closing costs charged either to the buyer or the seller. The amounts due to and from the buyer and seller are tallied, and a balance is either due to or from the buyer. On these HUD/FHA forms, the buyer is designated as the "borrower" and the balance is shown on line 303 of the borrower's side of the form with a block to check showing that cash is either due "to" or "from" the borrower. In three of the transactions, this balance was

due "to" the borrower and the appropriate block was checked. In another, neither block was checked. In the remaining transactions, the balance was due "from" the buyer. It is significant that the only possible blocks to be checked are cash "to" or "from" the "borrower." This is mirrored on the seller's side of the form with a block to be checked as to whether the cash was "to" or "from" the "seller."

These balances generally were fairly small—ranging from $31 to several hundred dollars. In a few cases, where no equity transfer or cash down payment was made, the amounts were several thousand dollars. The certification that the buyer and seller signed at the bottom of the second page of the form states, "I have carefully reviewed the HUD–1 Settlement Statement and to the best of my knowledge and belief it is a true and accurate statement of all receipts and disbursements made *on my account or by me* in this transaction." (Emphasis added.)

It is true that Gaudin, not the buyer, either paid or received these cash balances, but a genuine factual question arises as to how significant who paid or received the balance could be to the FHA. It appears quite doubtful from the format of the form and the certification on the form that it was designed to ferret out situations where the buyer might be serving as a stand-in for the seller or another person and did not intend to keep the house. If so, the form and the certification are very poorly designed to do so. This surely leads to a legitimate factual inquiry as to whether FHA officials pay any attention at all to line 303 of the HUD–1 form in their determination to insure the loan. Obviously, testimony or other evidence would be necessary to show that the block checked on line 303 was of any significance. Testimony was, indeed, taken from FHA officials to establish that factual contention.

The question then becomes whether the judge determines this factual component of the materiality issue or whether this is a factual matter that must be determined by the jury.

## II.

We recognize that most other circuits have held that the determination of materiality in criminal perjury and false statement statutes is a question of law for determination by the judge. In our circuit, we have held that the issue of materiality in most of these statutes is a question of law for the judge. The exception has been section 1001 cases, in which we have held that it is an element of the crime that must be determined by the jury. *United States v. Valdez*, 594 F.2d 725, 728–29 (9th Cir.1979). On the basis of *Valdez*, we reversed Gaudin's convictions on Counts 2–17, 19–42, and 44–46 because the district court removed the issue from the jury, instructing that the Government had established materiality as a matter of law.

The opinions holding that the issue of materiality in these criminal cases is a matter of law for the court to decide have relied on the 1929 Supreme Court case of *Sinclair v. United States,* 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692 (1929), which involved a congressional investigation into the Teapot Dome Scandal. The defendant was charged with a violation of 18 U.S.C. § 192 for failing to answer a question that was "pertinent to the question under inquiry." The Court held that the issue of pertinency was akin to determining relevance in the admission of evidence in a trial and therefore was a matter of law reserved for the court. *Id.* at 298, 49 S.Ct. at 273.

The essential issue before us is whether the opinions relying on *Sinclair* survive the more recent holdings of the Supreme Court that the Sixth Amendment and the Due Process Clause require that the facts essential to establish the elements of a crime must be decided by a jury.

## III.

In the oft-quoted opinion of *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970), the Supreme Court stated:

Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused

against conviction except upon proof [to a proper factfinder] beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

The application of this imperative has been developed in later Supreme Court opinions. *See, e.g., Sandstrom v. Montana,* 442 U.S. 510, 520–21, 99 S.Ct. 2450, 2457 (1979); *Cabana v. Bullock,* 474 U.S. 376, 384–85, 106 S.Ct. 689, 695–96, 88 L.Ed.2d 704 (1986); *Carella v. California,* 491 U.S. 263, 268–69, 109 S.Ct. 2419, 2422–23, 105 L.Ed.2d 218 (1989) (Scalia, J., concurring); *Yates v. Evatt,* 500 U.S. 391, 399–400, 111 S.Ct. 1884, 1891, 114 L.Ed.2d 432 (1991); *Sullivan v. Louisiana,* —— U.S. at ——, ——, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993). It is clear from this authority that under the Sixth Amendment the proper factfinder in serious criminal offenses is the jury. The Court in *Cabana* stated:

> A defendant charged with a serious crime has the right to have a jury determine his guilt or innocence, and a jury's verdict cannot stand if the instructions provided the jury do not require it to find each element of the crime under the proper standard of proof, *Sandstrom v. Montana,* 442 U.S. 510 [99 S.Ct. 2450, 61 L.Ed.2d 39] (1979). Findings made by a judge cannot cure deficiencies in the jury's finding as to the guilt or innocence of a defendant resulting from the court's failure to instruct it to find an element of the crime.

*Cabana,* 474 U.S. at 384–85, 106 S.Ct. at 696 (citation omitted).

In *Sullivan,* the Court summarized its prior holdings concerning the Sixth Amendment and Due Process requirements of what must be decided by a jury in criminal cases. The Court stated:

> The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." In *Duncan v. Louisiana,* 391 U.S. 145, 149 [88 S.Ct. 1444, 1447–48, 20 L.Ed.2d 491] (1968), we found this right to trial by jury in serious criminal cases to be "fundamental to the American scheme of justice," and therefore applicable in state proceedings. The right includes, of course, as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of "guilty." Thus, although a judge may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he may not direct a verdict for the State, no matter how overwhelming the evidence.
>
> What the factfinder must determine to return a verdict of guilty is prescribed by the Due Process Clause. The prosecution bears the burden of proving all elements of the offense charged, and must persuade the factfinder "beyond a reasonable doubt" of the facts necessary to establish each of those elements.

*Sullivan,* —— U.S. at ——, 113 S.Ct. at 2080–81 (citations omitted).[1]

With the quoted summary in the recent *Sullivan* case, it is clear that the jury must decide "the facts necessary to establish each [element of the crime]." As Justice Scalia has noted in his concurrence in *Carella,* the jury's fact-finding function is a structural matter that the Constitution guarantees.

> The constitutional right to a jury trial embodies "a profound judgment about the way in which law should be enforced and justice administered." It is a structural guarantee that "reflect[s] a fundamental decision about the exercise of official power—a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges." A defendant may assuredly insist upon observance of this guarantee even when the evidence against him is so overwhelming

---

1. We note in the above quotations that there is a difference in expressing the point in *Cabana* and *Sullivan.* The Court in *Cabana* speaks of the necessity of the jury deciding *all elements* of the crime, whereas the Court in *Sullivan* speaks of the necessity of the jury deciding the *facts necessary* to establish all elements of the crime. *Cabana* relied on *Sandstrom,* which in quoting *Winship* emphasized that it was *"every fact* necessary to constitute the crime"* that must be decided by the jury. *Winship,* 397 U.S. at 364, 90 S.Ct. at 1072–73; *Cabana,* 474 U.S. at 384, 106 S.Ct. at 695–96. It is apparent no difference in meaning is intended. *Cabana* uses a shorthand way of referring to the *Winship* quotation.

as to establish guilt beyond a reasonable doubt. That is why the Court has found it constitutionally impermissible for a judge to direct a verdict for the State.

*Carella,* 491 U.S. at 268, 109 S.Ct. at 2421 (citations omitted).

Most of the recent circuit opinions continue to hold that the issue of materiality in these cases is a question of law for the court, relying on *Sinclair,* without discussing the impact of the more recent line of authority following *Winship.* In a very thorough and thoughtful opinion, *United States v. Taylor,* 693 F.Supp. 828, 830–47 (N.D.Cal.1988), Judge Lynch questioned the continued vitality of this authority. He noted that the courts after *Sinclair* have accepted as a matter of rote that materiality is a question of law, without considering the effect of the *Winship* line of authority.

In the Seventh Circuit case of *United States v. Staniforth,* 971 F.2d 1355, 1358 (7th Cir.1992), Judge Posner noted that the holding that materiality is a question of law "is more than a little puzzling," because a criminal defendant is entitled to require the prosecutor to prove to the jury's satisfaction every element of the offense. The opinion went on to note that a factual basis is required to prove the element. The court did not decide the issue, however, because it was not raised on appeal.

Several state court decisions have reached the conclusion that the issue of materiality is for the jury to decide. The Supreme Courts of Massachusetts, New Jersey, and California have so held. *See Commonwealth v. McDuffee,* 379 Mass. 353, 398 N.E.2d 463, 469–70 (1979); *New Jersey v. Anderson,* 127 N.J. 191, 603 A.2d 928 (1992); and *People v. Hedgecock,* 51 Cal.3d 395, 272 Cal.Rptr. 803, 795 P.2d 1260 (1990).[2]

The Government argues that this question has now been put to rest by the Supreme Court in *Kungys v. United States,* 485 U.S. 759, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988), which the Government contends confirms that the issue of materiality is a matter of law in criminal false statement cases. We disagree. We find it difficult to believe that the Supreme Court sought to resolve this significant constitutional issue in criminal cases by statements concerning its standard of review of a judge's decision in a civil case, without mention of the constitutional implications. We discuss the matter further in Part VI.

## IV.

■ We now turn to consider whether materiality is an element of the crime charged in this case. The false statement charges were brought under 18 U.S.C. § 1001, which provides:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a *material fact,* or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be

2. The dissent speculates at length on the prospect that this decision could have serious effects on the finality of prior convictions. Initially, one must question whether this is an appropriate consideration at all. It would be hard to justify continuing to deprive defendants of their Fourth and Sixth Amendment rights on the ground that to do otherwise would cast doubt on prior convictions. However, even addressing this consideration, we note that this decision only affirms our prior authority that materiality is a question of fact for the jury in prosecutions under 18 U.S.C. § 1001, which has been the law in this circuit for 15 years. Thus, this opinion could have no effect on prior convictions under section 1001.

The application of this opinion to future prosecutions under other statutes is a matter to be considered as those cases arise. It is sheer speculation to forecast dire consequences from petitions for collateral relief that conceivably could upset prior convictions under other statutes. This requires an assumption as to how this holding will be applied to other statutes, that such holdings will be applied retroactively for collateral relief, and that limitations on collateral relief, such as procedural bar and *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), could be overcome. This speculation about collateral consequences, built on multiple assumptions, obscures the real point—whether a defendant is entitled under the Fourth and Sixth Amendments to have a jury decide the facts necessary to establish an element of the crime with which he is charged.

fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1001 (emphasis added).

We first held that materiality is an essential element of the offense prohibited by 18 U.S.C. § 1001 in *Paritem Singh Poonian v. United States*, 294 F.2d 74, 75 (9th Cir.1961). *See also United States v. Talkington*, 589 F.2d 415, 416 (9th Cir.1978); *United States v. Deep*, 497 F.2d 1316, 1321 (9th Cir.1974). In *Valdez*, we clarified that the materiality element is a question of fact to be determined by the jury. *Valdez*, 594 F.2d at 729. There appears to be scant authority to the contrary.

When a statute expressly provides for materiality as an element of the crime, it can hardly be said that it is not an element. *McMillan v. Pennsylvania*, 477 U.S. 79, 85, 106 S.Ct. 2411, 2415–16, 91 L.Ed.2d 67 (1986) (holding that the legislature's definition of an offense is usually dispositive). If, in construing the intent of Congress, the courts determine that materiality was intended by Congress to be an element of the crime, a similar result would seem apparent.

The first clause of section 1001 expressly states that the falsification or concealment must be of a material fact. The second and third clauses do not contain the express reference to a material fact. Our circuit and most other circuits have construed the intent of Congress to be that the element of materiality applies to all three clauses. It can be seen that the clauses are so closely related that this is the only reasonable construction of congressional intent. The means by which a person "falsifies, conceals or covers up" a material fact would be by "false fictitious or fraudulent statements" or by a "false writing or document." It is difficult to conceive of a "trick, scheme or device" to accomplish the falsification or concealment that would not involve such a statement or document. We thus conclude that our prior construction of the statute is sound and that materiality is an element of the crime of all charges under section 1001.

## V.

■ Because materiality is an element of the crime, can it be determined as a matter of law? Conceivably, this could be justified if the determination had no factual component at all. The Supreme Court in the *Kungys* opinion states that the customary common law test of materiality in false statement statutes is whether the statement " 'has a natural tendency to influence, or was capable of influencing, the decision' of the decision-making body to which it was addressed." *Kungys*, 485 U.S. at 770, 108 S.Ct. at 1546. It would seem that a factual inquiry would nearly always be necessary to determine what makes a difference to the decisionmaking body. Perhaps if what is material is spelled out in the statutes or in regulations, it would be a pure question of law. However, in most situations, it is a mixed question of law and fact.

Certainly in the section 1001 cases this is true, as is well illustrated in this case. There is no way of knowing the significance to HUD of line 303 of the settlement form without agency testimony.

Even in the perjury cases, it is difficult to say there is no factual component. There is a difference between relevance from an evidentiary standpoint and materiality as an element of a crime. Where a defendant is prosecuted for perjury committed in a former trial, relevance determines what evidence the jury could have considered, while materiality determines what would have tended to influence its verdict. If the court in the perjury trial concludes that a statement properly was admitted as relevant in the former trial, that is not necessarily equivalent to finding that it would tend to influence the jury. Much evidence may be admitted as relevant, and yet have no influence on the jury's findings regarding the essential elements of the charged crime. The jury in the perjury trial might well find that the relevant evidence could have made no difference to the former jury. Would it not be more faithful to Sixth Amendment requirements to instruct the jury that the statement in question was admissible evidence in the former trial and leave the question to the jury as to whether it could have tended to influence the prior jury?

In any event, the argument that materiality is a pure question of law becomes more

attenuated as we move to other circumstances. For example, when the statement is made to a grand jury, there is a necessary factual inquiry as to the nature of the investigation being conducted. Certainly, when the statement is to an agency (as in this case) there is, of necessity, a factual inquiry as to what tends to or is capable of influencing the agency's decision. Justice Scalia in *Kungys* describes such an inquiry as "fact-bound." *Id.* at 773 n. 6, 108 S.Ct. at 1547 n. 6.

Only if it can be said that there is no factual component to the determination of materiality and, thus, that it is a pure question of law, would the Sixth Amendment constraint not apply. However, if it is a mixed question of law and fact, then it must be submitted to the jury. It would not be faithful to the Sixth Amendment for the judge to decide the factual component of the element necessary to constitute the crime. In section 1001 cases, it is clear that materiality is a mixed question of law and fact and, thus, must be submitted to the jury.

Although we are confronted in this case with only the issue of whether materiality must be submitted to the jury in section 1001 cases, it seems to be courting constitutional error to withdraw the materiality question from the jury in other perjury and false statement cases because of the difficulty in concluding that there is no factual component for jury determination. Juries are perfectly capable of deciding the question of materiality under appropriate instructions. We frequently submit far more complex questions to juries and have found through the centuries that they do quite well. The Sixth Amendment reflects a conscious judgment of the Framers to interpose a jury between the judge and the accused to determine the facts necessary to find the accused guilty. This is why a judge may not direct a verdict against a defendant no matter how clear the evidence, nor may an appellate court conclude under a harmless error doctrine that a jury "would have" found an essential element of the crime if the jury did not do so under appropriate instructions. *Sullivan,* —— U.S. at ——, 113 S.Ct. at 2080, 2082.

## VI.

The Supreme Court's decision in *Kungys* does not foreclose the foregoing analysis.

*Kungys* involved the denaturalization of a citizen, in a civil, non-jury proceeding. The Government charged that there were several material false statements on Kungys' visa application, including his date and place of birth, and sought denaturalization of Kungys on those grounds. The district court held that the false statements on the visa application were not material to the naturalization process and, thus, could not constitute a basis for denaturalization under 8 U.S.C. § 1451(a). The circuit court of appeals reversed, holding that the false statements concerning date and place of birth were material. The Supreme Court reversed the court of appeals on that issue, but remanded for determination of other issues.

In the process of reviewing the materiality decision, the Court stated that it must first decide whether the determination of the materiality of the false statement of the date and place of birth should be reviewed as a question of law or a question of fact. *Kungys,* 485 U.S. at 772, 108 S.Ct. at 1547. In effect, the Court was determining the appropriate standard of review of the district court's decision in this civil case. In making this determination, the Court stated:

[W]e see no reason not to follow what has been done with the materiality requirement under other statutes dealing with misrepresentations to public officers. "[T]he materiality of what is falsely sworn, when an element of the crime of perjury, is one for the court." *Sinclair v. United States,* 279 U.S. 263, 298, [49 S.Ct. 268, 273, 73 L.Ed. 692] (1929). As the Sixth Circuit has said in a case involving 18 U.S.C. § 1001:

[A]lthough the materiality of a statement rests upon a factual evidentiary showing, the ultimate finding of materiality turns on an interpretation of substantive law. Since it is the court's responsibility to interpret the substantive law, we believe [it is proper to treat] the issue of materiality as a legal question. *United States v. Abadi,* 706 F.2d 178,

180, *cert. denied,* 464 U.S. 821 [104 S.Ct. 86, 78 L.Ed.2d 95] (1983).

*Id.* This has been determined by some courts to constitute a conclusion that the 1929 *Sinclair* ruling on materiality in criminal cases survives the analysis of the more recent line of cases from *Winship* to *Sullivan.* That issue was not before the court in that civil case. We find it inconceivable that the Supreme Court intended to resolve that constitutional question reconciling the *Sinclair* holding with the later pronouncements in *Winship* through *Sullivan* in a civil nonjury case without ever mentioning the *Winship* line of cases.

The Court's very quote from the *Abadi* opinion acknowledges that the materiality of a statement rests upon "a factual evidentiary showing." The *Abadi* opinion offers no explanation of why the judge, rather than the jury, can constitutionally decide this question . of fact in a criminal case. The *Abadi* decision mentions *Winship* in a footnote but avoids its implications on the ground that materiality is not an element of the crime defined by 18 U.S.C. § 1001. For the reasons we have explained, we consider this conclusion to be unsound. We note that the Supreme Court did not mention or endorse that conclusion in the footnote.

The Court's opinion in stating the test for determining materiality, that the false statement be one that "has a natural tendency to influence or was capable of influencing, the decision of the decisionmaking body," noted that this involves a factual determination. The opinion states, "[t]his test must be met, of course, by *evidence* that is clear, unequivocal, and convincing." *Kungys,* 485 U.S. at 772, 108 S.Ct. at 1547 (emphasis added). The judge may be free to evaluate this evidence in order to make that determination in a civil case, but this is not true in a criminal case. Furthermore, in a criminal case, the test must be met by evidence that establishes materiality beyond a reasonable doubt. Justice Scalia also explains the reason for remanding certain of the alleged misrepresentations stating, "it is not our normal practice to consider *fact-bound legal consequences* of contested district court *findings* not yet reviewed by the court of appeals." *Id.* at 773

n. 6, 108 S.Ct. at 1547 n. 6 (emphasis added). In a criminal case, *Sullivan* would require that these findings of fact be made by a jury.

## VII.

The case before us is an excellent illustration of why materiality under a section 1001 charge is a "fact-bound" inquiry. One cannot look at a particular law or a particular statute or regulation to determine what would affect the decision of the HUD to insure an FHA loan. False statements of age, address, gaps in employment history, or inaccuracies in a financial statement may be of no importance to some agency determinations but crucial to others.

In Gaudin's case, the charges in Counts 2–17 and 19–42 involve merely checking a block on line 303 of a settlement statement that indicated that the borrower, rather than Gaudin, was paying or receiving the balance of the charges on settlement. Some of the amounts written on line 303 were trivial. For example: Count 11, $94.11; Count 12, $122.61; Count 13, $31.07; Count 28, $129.93; Count 31, $91.83. It was necessary to take testimony of department officials in order to determine whether the block checked on line 303 of the settlement statement would tend to influence the agency's decision to insure the loan.

The jury is the finder of fact and is entitled to believe or disbelieve the testimony of the department officials. A persuasive factual argument could be made that there was a reasonable doubt as to whether the particular block checked on line 303 would have tended to influence the agency's decision. That line on the form serves the purpose of tallying the two sides of the settlement form and arriving at a balance. It is not a certification that either party actually paid or received the funds. The actual certification by the parties above their signatures states, "I have carefully reviewed the HUD–1 Settlement Statement and to the best of my knowledge and belief it is a true and accurate statement of all receipts and disbursements made *on my account or by me* in this transaction." (Emphasis added.) With the certification itself not distinguishing whether the receipts and disbursements were made "by

me" or "on my account," this adds credence to an argument that the particular block checked on line 303 would not have any tendency to influence the agency's decision. This is a factual question and the Sixth Amendment and the Due Process Clause require that it be put to a jury to determine this factual issue beyond a reasonable doubt. It is apparent that the argument for materiality is stronger in Counts 44–46 where the statements concern appraisals of market value. The point, however, is that no matter how clear evidence may be, the Sixth Amendment requires that the jury, not the judge, must find the facts necessary to decide this element of the crime beyond a reasonable doubt.

■ Of course, a judge may rule that a false statement is not material as a matter of law, that is, that the evidence is insufficient for the jury to find that the statement is material. However, when the judge rules that a false statement is material, and withdraws the element of materiality from the jury, the judge deprives the jury of its fact-finding duty and violates the defendant's Due Process and Sixth Amendment rights.

### VIII.

We conclude that when the element of materiality requires a factual finding, as it does in section 1001 prosecutions, that element must be submitted to the jury. The district court erred when it instructed the jury that the statements were material as a matter of law. As we discussed in the panel opinion, *Gaudin*, 997 F.2d at 1271–72, such an error cannot be harmless. *See Sullivan*, —— U.S. at ——–——, 113 S.Ct. at 2081–82; *see also Yates v. Evatt*, 500 U.S. 391, 406, 111 S.Ct. 1884, 1894, 114 L.Ed.2d 432 (1991); *Martinez v. Borg*, 937 F.2d 422, 424 (9th Cir.1991). Harmless error analysis focuses on "the basis on which 'the jury actually rested its verdict.'" *Sullivan*, —— U.S. at ——, 113 S.Ct. at 2081; *Yates*, 500 U.S. at 403–05, 111 S.Ct. at 1893. Under the guidance of *Yates*, we may no longer consider the strength of evidence and determine whether it was so clear that the jury *would have* found the element of a crime to exist, had it been properly instructed, but, instead, we must determine whether the jury was actually able to consider that evidence under the instructions given by the court. When proof of an element has been completely removed from the jury's determination, there can be no inquiry into what evidence the jury considered to establish that element because the jury was precluded from considering whether the element existed at all.

■ Because Gaudin did not object to the instruction that removed the question of materiality from the jury, we must also determine whether this error was "plain error." In the panel decision, we discussed the relationship between harmless error and plain error, noting that the latter is the more restrictive standard. *See Gaudin*, 997 F.2d at 1271. In discussing plain error, we applied the standard set forth in *United States v. Young*, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), in determining that withdrawing the issue of materiality from the jury was plain error and reversing the convictions on that basis.

The dissent asserts that the more recent case of *United States v. Olano*, —— U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) requires a different conclusion. We disagree. *Olano* concerned the presence of alternate jurors in the jury room during the jury's deliberations. This was in violation of Federal Rule of Criminal Procedure 24(c). The error was not objected to at the trial level and was not raised by the defendant on appeal. The court of appeals took notice of the error on its own initiative and reversed. The Supreme Court reversed the decision of the court of appeals on the basis that the error did not affect substantial rights of the defendant because there was no showing that the presence of the alternates affected the verdict and, there was, thus, no showing of prejudice.

In the course of its decision, the Court quoted Federal Rule of Civil Procedure 52(b) and the appropriate standards in applying the Rule as set forth in *Young*. Rule 52(b) provides:

*PLAIN ERROR.* Plain errors or defects affecting substantial rights may be noticed

although they were not brought to the attention of the court.

The Court, in analyzing the application of Rule 52(b), stated:

Although a rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with ... the rules of fundamental justice, the authority created by Rule 52(b) is circumscribed. There must be an error that is plain and that affects substantial rights. Moreover, Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the Court of Appeals, and the court should not exercise that discretion unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings. *United States v. Young,* 470 U.S. 1, 15, 84 L.Ed.2d 1, 105 S.Ct. 1038 [1046] (1985) (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 80 L.Ed. 555, 56 S.Ct. 391 [392] (1936)).

*Olano,* —— U.S. at ——, 113 S.Ct. at 1776, 123 L.Ed.2d at 518 (internal citations and quotation marks omitted).

There is no doubt in the present case that the error was "plain." It violated clear circuit precedent that had been in existence for 15 years. It also affected Gaudin's substantial constitutional right to have a jury, not a judge, decide the facts necessary to establish the existence of an element of the crime. In *Olano,* the Court was concerned with the possible prejudice from the presence of alternate jurors during deliberations. In this case, we are concerned with a fundamental structural error where the jury was not permitted to render a verdict as to the existence of an element of the crime. Here, our concern is not with a possible unfair prejudicial impact on the jury's deliberations, but with the failure to allow the jury to deliberate on the issue at all. Gaudin has met his burden to show that error affected substantial rights.

As we have noted, the Court in *Olano* also stated that Rule 52(b) leaves the decision to correct the error within the sound discretion of the court of appeals, to be exercised only when "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Olano,* —— U.S. at ——, 113 S.Ct. at 1772, 123 L.Ed.2d at 518. When a defendant has not been accorded his Fourth and Sixth Amendment rights to a jury determination of the existence of an essential element of the crime, we conclude that the error meets that standard. Furthermore, in this case, as we have pointed out elsewhere, there was a serious factual question for the jury as to whether a block checked on line 303 of the HUD–1 Settlement Statement could have a tendency to influence the agency's decision to secure the loan.

Even more importantly, if we were to engage in this fact-finding, as the dissent suggests, we would be substituting our conclusion of what a jury would have found, not what it did find. This is the very inquiry deemed inappropriate in *Sullivan.* We conclude that there is a sound basis for the exercise of our discretion to correct the plain error raised on appeal.

In conclusion, we confirm our prior authority that the issue of materiality in charges under 18 U.S.C. § 1001 must be submitted to the jury under appropriate instructions. Therefore, in conformity with the panel opinion, the conviction on Count 1, equity skimming, is **AFFIRMED**. The convictions on Counts 2–17, 19–42, and 44–46 are **REVERSED and REMANDED** for further proceedings in accordance with the opinions of this court.

# APPENDIX A

| A.    U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT<br>SETTLEMENT STATEMENT | B. TYPE OF LOAN |
|---|---|
| WESTERN MORTGAGE LOAN CORPORATION dba<br>UNITED-WESTERN MORTGAGE CORPORATION<br>2502 BROOKS<br>MISSOULA, MONTANA 59801 | 1. ☒ FHA   2. ☐ FMHA   3 ☐ CONV. UNINS.<br>4. ☐ VA   5. ☐ CONV. INS. |
| | 6. FILE NUMBER: 00523    7. LOAN NUMBER |
| | 8. MORT. INS. CASE NO.: 311-0866396-703 |

C.   NOTE. This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p o c )" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. NAME OF BORROWER:<br>HAWTHORNE, WARREN B.<br><br>706 HOMESTEAD<br>METAIRIE, LOUISIANA 70005 | E. NAME OF SELLER<br>HALLMARK PROPERTIES, INC. | F. NAME OF LENDER:<br>WESTERN MORTGAGE LOAN<br>CORPORATION dba UNITED-<br>WESTERN MORTGAGE CORPORATI<br>2502 BROOKS<br>MISSOULA, MONTANA 59801 |
|---|---|---|
| G. PROPERTY LOCATION:<br>NHN PINE DRIVE<br>VICTOR, MONTANA 59875 | H. SETTLEMENT AGENT:<br>FIRST MONTANA TITLE COMPANY<br>250 W. MAIN HAMILTON, MT<br>PLACE OF SETTLEMENT:<br>250 W. MAIN<br>HAMILTON, MT | I. SETTLEMENT DATE:<br><br>12/09/86 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| 100 GROSS AMOUNT DUE FROM BORROWER | | 400 GROSS AMOUNT DUE TO SELLER | |
| 101. Contract sales price | 46,000.00 | 401. Contract sales price | 46,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 2,287.77 | 403. Occupancy Interest Credit | |
| 104. | | 404. from   to   at   /day | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. Reimburse Seller | 148.80 | 409. | 148.80 |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120 GROSS AMOUNT DUE FROM BORROWER | 48,436.57 | 420. GROSS AMOUNT DUE TO SELLER | 46,148.80 |
| 200 AMOUNTS PAID BY OR IN BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER | |
| 201. Deposit or earnest money | 86.00 | 501. Excess deposit (see instructions) | 86.00 |
| 202. Principal amount of new loan(s) | 41,208.00 | 502. Settlement charges to seller (line 1400) | 613.81 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Deposit with Lender | 148.80 | 504. Payoff of first mortgage loan ICA Mortg. | 39,000.00 |
| 205. Credits from Seller | | 505. Payoff of second mortgage loan | |
| 206. Occupancy - Rent | | 506. Held Pending Release of Lien | |
| 207. | | 507. Interest Adjustment | |
| 208. Equity Transfer | 6,814.00 | 508. from Equity Transfer | 6,814.00 |
| 209. | | 509. Earnest Money Rec'd. by | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes to | | 511. County Taxes to | |
| 212. at /day | | 512. at /day | |
| 213. Assessments | | 513. Assessments | |
| 214. | | 514. Credits from Seller | |
| 215. | | 515. 1986 2nd half tax | 288.50 |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220 TOTAL PAID BY/FOR BORROWER | 48,256.80 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | 46,802.31 |
| 300 CASH AT SETTLEMENT FROM OR TO BORROWER | | 600. CASH AT SETTLEMENT TO OR FROM SELLER | |
| Gross amount due from borrower (line 120) | 48,436.57 | 601. Gross amount due to seller (line 420) | 46,148.80 |
| Less amounts paid by/for borrower (line 220) | 48,256.80 | 602. Less reduction amount due seller (line 520) | 46,802.31 |
| 303. CASH [☒ FROM] [☐ TO] BORROWER | 179.77 | 603. CASH [☐ TO] [☒ FROM] SELLER | 653.51 |

LESS ONE DAY INTEREST AT 10.1

| Warren B. Hawthorne | 12/8/86 | [signature] | 12/8/86 |
|---|---|---|---|
| (BORROWER) | DATE | (SELLER) | DATE |
| (BORROWER) | DATE | (SELLER) | DATE |

954

| L. SETTLEMENT CHARGES | | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|
| 700 TOTAL SALES/BROKER'S COMMISSION | | at | $ | | |
| Division of commission (line 700) as follows | | | | | |
| 701 $ | to | | | | |
| 702 $ | to | | | | |
| 703 Commission paid at Settlement | | | | | |
| 704 | | | | | |
| 800 ITEMS PAYABLE IN CONNECTION WITH LOAN | | | | | |
| 801 Loan Origination Fee | % | | | 397.00 | |
| 802 Loan Discount | % | | | | 309.06 |
| 803 Appraisal Fee | to | | | 148.80 | |
| 804 Credit Report | to | | | | |
| 805 Lender's Inspection Fee | | | | | |
| 806 Mortgage Insurance Application Fee | to | | | | |
| 807 Assumption Fee | | | | | |
| 808 Tax Search Fee | | | | | 46.00 |
| 809 FNMA Underwriting Fee | | | | | |
| 810 | | | | | |
| 811 | | | | | |
| 900 ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE 10.16 | | | | 71.12- | |
| 901 Interest from 12-1 to 12-8 at $ XXXXX /day 7 days credit | | | | XXXXXXXXXX | |
| 902 Mortgage Insurance Premium for 360 mo. to HUD | | | | 1,508.60 | |
| 903 Hazard Insurance Premium for yrs to | | | | P.O.C. | |
| 904 yrs to | | | | | |
| 905 Flood Insurance Premium yrs. to | | | | | |
| 1000 RESERVES DEPOSITED WITH LENDER FOR | | | | | |
| 1001 Hazard Insurance 3 mo. at $ 18.50 /mo | | | | 55.50 | |
| 1002 Mortgage Insurance mo. at $ /mo | | | | | |
| 1003 City property taxes mo. at $ /mo. | | | | | |
| 1004 County property taxes 1 mo. at $ 48.08 /mo. | | | | 48.08 | |
| 1005 Annual assessments mo. at $ /mo | | | | | |
| 1006 mo. at $ /mo | | | | | |
| 1007 Flood Insurance mo. at $ /mo | | | | | |
| 1008 mo. at $ /mo. | | | | | |
| 1100 TITLE CHARGES | | | | | |
| 1101 Settlement or closing fee to | | | | | |
| 1102 Abstract or title search to | | | | | |
| 1103 Title examination to | | | | | |
| 1104 Title insurance binder to | | | | | |
| 1105 Document preparation to | | | | | |
| 1106 Notary fees to | | | | | |
| 1107 Attorney's fees to | | | | | |
| (includes above items No ) | | | | | |
| 1108 Title insurance to | | | | 119.90 | 188.75 |
| (includes above items No ) | | | | | |
| 1109 Lender's coverage $ 41,208.00 | | | | | |
| 1110 Owner's coverage $ 41,208.00 | | | | | |
| 1111 Endorsements 100 & 116 to Title Insurance Policy | | | | | |
| 1112 | | | | 50.00 | 50.00 |
| 1113 | | | | | |
| 1200 GOVERNMENT RECORDING AND TRANSFER CHARGES | | | | | |
| 1201 Recording fees Deed $ 10.00 ; Mortgage $ 25.00 ; Release/reconvey $ 20.00 | | | | 35.00 | 20.00 |
| 1202 City/county tax/stamps Deed $ Mortgage $ | | | | | |
| 1203 State tax/stamps Deed $ Mortgage $ | | | | | |
| 1204 | | | | | |
| 1205 | | | | | |
| 1300 ADDITIONAL SETTLEMENT CHARGES | | | | | |
| 1301 Survey to | | | | | |
| 1302 Pest Inspection to | | | | | |
| 1303 Photos | | | | | |
| 1304 Inspection Fee | | | | | |
| 1305 | | | | | |
| 1400 TOTAL SETTLEMENT CHARGES (enter on lines 103 and 502, Sections J and K) | | | | 2,287.77 | 613.81 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

*Warren B. Hawthorne*

Borrowers                                              Sellers

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction I have caused or will cause the funds to be disbursed in accordance with this statement.

*signature*                                    *December 8, 1986*

Settlement Agent                                              Date

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

KOZINSKI, Circuit Judge, with whom WALLACE, Chief Judge, and LEAVY, RYMER and T.G. NELSON, Circuit Judges, join, dissenting:

Court of appeals opinions, particularly en banc opinions, frequently raise waves on the waters of the law. Today's opinion is more akin to a tsunami. It's not every day, after all, that we provoke a conflict with every other regional circuit, defy Supreme Court authority, implicitly overrule several lines of our own case law—thereby creating a spider-web of secondary circuit conflicts—and pave the way for successful habeas petitions for scores, perhaps hundreds, of prisoners convicted of a broad range of federal crimes.

This upheaval might be justified if we were facing a problem not addressed or understood by other courts. In fact, though, whether the materiality of false statements to the government is a question of fact or of law has been kicking around for some time, and every other regional circuit has concluded that it is a question of law to be decided by the district judge. It seems imprudent for us to mount an assault on this donjon of federal court authority. To also defy the Supreme Court because we can't believe the Court meant what it said, Majority op. at 947, only underscores the boldness of our foray.

That Gaudin never objected to the error below further complicates the matter. The majority, like the three judge panel, holds that all *Winship* error is perforce plain error. *See* Majority op. at 952; *see also United States v. Gaudin,* 997 F.2d 1267, 1272–73 (9th Cir.1993). This is not only very bad policy; it misapplies the Supreme Court's most recent pronouncement and precipitates further circuit conflicts. Finally, as happened in the wake of *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), today's opinion will cause a large number of criminal convictions to be vacated on both direct appeal and habeas, haunting the law of our circuit for years to come.

**I**

## A. *Conflict with Other Circuits*

Every other circuit to have considered whether materiality under 18 U.S.C. § 1001 is a question of fact or a question of law—which means every circuit except the Federal—has held that it's a question of law: *See United States v. Corsino,* 812 F.2d 26, 31 n. 3 (1st Cir.1987) (disagreeing with *United States v. Valdez,* 594 F.2d 725, 729 (9th Cir. 1979), and ruling that materiality is a question of law); *United States v. Bernard,* 384 F.2d 915, 916 (2d Cir.1967); *United States v. Elkin,* 731 F.2d 1005, 1009 (2d Cir.1984);[1] *United States v. Greber,* 760 F.2d 68, 73 (3d Cir.1985); *Nilson Van & Storage Co. v. Marsh,* 755 F.2d 362, 367 (4th Cir.1985); *United States v. Hausmann,* 711 F.2d 615, 616–17 (5th Cir.1983); *United States v. Chandler,* 752 F.2d 1148, 1150–51 (6th Cir. 1985); *United States v. Brantley,* 786 F.2d 1322, 1327 & n. 2 (7th Cir.1986); *United States v. Hicks,* 619 F.2d 752, 758 (8th Cir. 1980); *United States v. Daily,* 921 F.2d 994, 1004 (10th Cir.1990); *United States v. Lopez,* 728 F.2d 1359, 1362 n. 4 (11th Cir.1984); *United States v. Hansen,* 772 F.2d 940, 950 (D.C.Cir.1985).

All these courts considered (or reconsidered) this issue after our contrary holding in *Valdez* and remained unpersuaded. What more can one possibly say except that the maverick spirit is alive and well here in the West?

## B. *Conflict with the Supreme Court*

Given the diversity of views normally displayed by court of appeals judges, there must be a pretty good reason for such monolithic uniformity. And there is: The Supreme Court has cases directly on point. Over six decades ago, the Court held in *Sinclair v. United States,* 279 U.S. 263, 298–99, 49 S.Ct. 268, 273–74, 73 L.Ed. 692 (1929), that materiality—or at least pertinency—is a legal issue in false statement prosecutions. When charged with failing to answer "any question pertinent to the question under inquiry" by Congress, *id.* at 285, 49 S.Ct. at

---

**1.** The Second Circuit is somewhat atypical because it holds that materiality is not an element

of the second clause of 18 U.S.C. § 1001. *Elkin,* 731 F.2d at 1009.

269, Sinclair argued that pertinency was a factual question—the same claim Gaudin makes about materiality under section 1001. The Court disagreed: "That question may be likened to those concerning relevancy at the trial of issues in court, and it is not essentially different from the question as to materiality of false testimony charged as perjury in prosecutions for that crime.... [T]he materiality of what is falsely sworn, when an element in the crime of perjury, is one for the court." *Id.* at 298, 49 S.Ct. at 273.

The continued vitality of *Sinclair* is subject to legitimate question because it antedated the Court's *Winship* line of cases. Majority op. at 945–946. But *Sinclair* was given new life in *Kungys v. United States*, 485 U.S. 759, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988), where the Court held that materiality, as that term is used in 8 U.S.C. § 1451, is a question of law. In reaching that conclusion, the Court expressly reaffirmed *Sinclair* and relied heavily on the Sixth Circuit's analysis in *United States v. Abadi*, 706 F.2d 178 (6th Cir.1983), a criminal case involving 18 U.S.C. § 1001. *Kungys*, 485 U.S. at 772, 108 S.Ct. at 1547.

The majority does not find itself bound by *Kungys* because *Kungys* was not a criminal case and so did not raise a *Winship* issue. Majority op. at 949–950. But *Kungys* cannot be so easily cast aside. Something is either a question of law or a question of fact; it can't be both. Once it is held to be a question of law—as materiality was in *Kungys*—certain consequences follow. One is that the standard of review is de novo rather than for substantial evidence. Another is that, in a criminal case, it need not be decided by a jury. The majority confuses these consequences with the initial determination by conjecturing that the Court would have reached a different conclusion in *Kungys* had it but focused on *Winship*. *Id.* In fact, there is no tension between *Kungys* and *Winship:* Once materiality is deemed to be a question of law, *Winship* poses no impediment to having it determined by the court in a criminal case. By refusing to accept *Kungys's* clear ruling on that point, the majority is placed in the awkward position of holding that something is a question of fact for purposes of *Winship* even though it is a question of law for purposes of appellate review.

The determination in *Kungys* that materiality is a question of law was not dicta, but a considered aspect of the Court's holding.[2] We need not agree with the Court and are surely entitled to point out that its ruling may have unintended consequences. The Court can reconsider its case law in light of experience or new information; we must apply it as written.

This is the conclusion reached by the Tenth Circuit. Before *Kungys*, that court, like our own, had held that materiality under section 1001 was a question for the jury. *See United States v. Irwin*, 654 F.2d 671, 677 n. 8 (10th Cir.1981); *United States v. Radetsky*, 535 F.2d 556, 571 (10th Cir.1976). But *Kungys* caused it to change its rule:

> Upon consideration of ... *Kungys*, we conclude that materiality under § 1001 is a question of law for the court and, accordingly, the trial court's refusal to submit the materiality issue under § 1001 to the jury was not error. The court now disavows our prior holdings to the contrary. We are mindful that our panel is bound by prior decisions of this court, but we are authorized by all the active judges of this court to state that the court endorses this overruling of our prior cases on the materiality issue under § 1001 in light of the Supreme Court's guidance in *Kungys*.

*United States v. Daily*, 921 F.2d 994, 1004 (10th Cir.1990) (citations and footnote omitted). Confronted with the compelling authority of *Kungys*, the Tenth Circuit recognized its duty and, effectively, went en banc to bring its case law in line with the Supreme Court. We should be doing the same.

### C. Implicit Overruling of Our Case Law in Other Areas

Although the majority only interprets 18 U.S.C. § 1001, its rationale sweeps much far-

---

2. Even if it *were* dicta, we could not lightly ignore it: "[F]ederal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when, as here, a dictum is of recent vintage and not enfeebled by any subsequent statement." *McCoy v. Massachusetts Inst. of Technology*, 950 F.2d 13, 19 (1st Cir.1991); *see also United States v. Underwood*, 717 F.2d 482, 486 (9th Cir.1983).

ther. If materiality is a question of fact for the jury in section 1001 prosecutions, it's a question of fact in other contexts as well. The majority recognizes the clear implications of its holding by noting that "it seems to be courting constitutional error to withdraw the materiality question from the jury in other perjury and false statement cases because of the difficulty in concluding that there is no factual component for jury determination." Majority op. at 949.

We have a substantial body of case law holding that materiality is a question of law under a variety of statutes. Thus judges, not juries, decide the materiality of false statements in tax returns. *United States v. Flake,* 746 F.2d 535, 537–38 (9th Cir.1984) (construing 26 U.S.C. § 7206); *see id.* (confining *Valdez* to section 1001). Ditto for false statements to grand juries, *United States v. Prantil,* 764 F.2d 548, 557 (9th Cir.1985) (construing 18 U.S.C. § 1623), *United States v. Dipp,* 581 F.2d 1323, 1328 (9th Cir.1978) (discussing information judge needs to make materiality determination under section 1623), *United States v. Sisack,* 527 F.2d 917, 920 n. 2 (9th Cir.1975) (judge must decide materiality under section 1623), *United States v. Percell,* 526 F.2d 189, 190 (9th Cir. 1975) (same); for false statements in applications for payments in federally-approved plans for medical assistance, *United States v. Larm,* 824 F.2d 780, 783–84 (9th Cir.1987) (construing predecessor to 42 U.S.C. § 1320a–7b), *see id.* at 783 (noting *Valdez* has been limited to section 1001); and for perjury, *United States v. Clark,* 918 F.2d 843, 845–46 (9th Cir.1990) (construing 18 U.S.C. § 1621), *see id.* (confining *Valdez* to section 1001 because circuit had done so twice before), *Vitello v. United States,* 425 F.2d 416, 423 (9th Cir.1970) (construing section 1621).

Without mentioning these cases, the majority cuts the ground out from under them:

> In our circuit, we have held that the issue of materiality in most of these statutes is a question of law for the judge. The exception has been section 1001 cases.... The opinions holding that the issue of materiality in these criminal cases is a matter of law for the court to decide have relied on the 1929 Supreme Court case of *Sin-*

*clair.... The essential issue before us is whether the opinions relying on* Sinclair *survive....*

Majority op. at 945 (emphasis added). The majority takes particular aim at our cases involving perjury and false statements to the grand jury. *Id.* at 948–949.

The majority tries to hedge its bets by suggesting that the effect of its ruling on "future prosecutions under other statutes" is somehow an open question. Majority op. at 947 n. 2. This is difficult to square with the majority's ominous language about "courting constitutional error" if the question of materiality is withdrawn from the jury "in other perjury and false statement cases." *Id.* at 949. As a practical matter, this warning may be sufficient to prevent district courts from following our earlier case law, particularly since the aggrieved party—the government—can't appeal.

It's fair to say, therefore, that we have effectively (though tacitly) laid these cases to rest. In so doing, we unleash a series of further conflicts with our sister circuits. Take, for example, false statements in tax returns. By abandoning *Flake,* we create a conflict with six other circuits—all of which have assigned the materiality inquiry to the judge. *See United States v. Romanow,* 509 F.2d 26, 28 (1st Cir.1975) (materiality of false statements in tax return under 18 U.S.C. § 7206 decided by judge); *United States v. Greenberg,* 735 F.2d 29, 31 (2d Cir.1984) (same); *United States v. Taylor,* 574 F.2d 232, 235 (5th Cir.1978) (same); *United States v. Haynes,* 573 F.2d 236, 240 (5th Cir.1978) (same); *Hoover v. United States,* 358 F.2d 87, 89 (5th Cir.1966) (same); *United States v. Whyte,* 699 F.2d 375, 379 (7th Cir.1983) (same); *United States v. Strand,* 617 F.2d 571, 573 (10th Cir.1980) (same); *United States v. Gaines,* 690 F.2d 849, 858 (11th Cir.1982) (same). *But see United States v. Null,* 415 F.2d 1178, 1181 (4th Cir.1969) (submitting issue to jury).

Or, take our cases holding that judges should decide the materiality of false statements made to a grand jury. *See Prantil,* 764 F.2d at 557 (construing 18 U.S.C. § 1623); *Dipp,* 581 F.2d at 1328 (same); *Sisack,* 527 F.2d at 920 n. 2 (same); *Percell,*

526 F.2d at 190 (same). In sweeping aside these cases, the majority creates a conflict with fifty-one cases and—not surprisingly—every other regional circuit. *See United States v. Paxson,* 861 F.2d 730, 731 (D.C.Cir. 1988); *United States v. Bridges,* 717 F.2d 1444, 1448 (D.C.Cir.1983); *United States v. Glantz,* 847 F.2d 1, 10 (1st Cir.1988); *United States v. Stackpole,* 811 F.2d 689, 695 (1st Cir.1987); *United States v. Collatos,* 798 F.2d 18, 19 (1st Cir.1986); *United States v. Scivola,* 766 F.2d 37, 44 (1st Cir.1985); *United States v. Kehoe,* 562 F.2d 65, 68 (1st Cir.1977); *United States v. Doherty,* 867 F.2d 47, 69 (1st Cir.1989); *United States v. Kiszewski,* 877 F.2d 210, 218 (2d Cir.1989); *United States v. Lighte,* 782 F.2d 367, 372 (2d Cir.1986); *United States v. Weiss,* 752 F.2d 777, 786 (2d Cir.1985); *United States v. Cunningham,* 723 F.2d 217, 226 (2d Cir.1983); *United States v. Moon,* 718 F.2d 1210, 1237 (2d Cir.1983); *United States v. Berardi,* 629 F.2d 723, 728 (2d Cir.1980); *United States v. Mulligan,* 573 F.2d 775, 779 (2d Cir.1978); *United States v. Mancuso,* 485 F.2d 275, 280 (2d Cir.1973); *United States v. Slawik,* 548 F.2d 75, 79 (3d Cir.1977) (in dicta); *United States v. Weiler,* 143 F.2d 204, 204 (3d Cir. 1944) (involving predecessor statute), *rev'd on other grounds,* 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495 (1945); *United States v. Flowers,* 813 F.2d 1320, 1325 (4th Cir.1987); *United States v. Farnham,* 791 F.2d 331, 333 (4th Cir.1986); *United States v. Bailey,* 769 F.2d 203, 203 (4th Cir.1985); *United States v. Paolicelli,* 505 F.2d 971, 973 (4th Cir.1974); *United States v. Holley,* 942 F.2d 916, 923 (5th Cir.1991); *United States v. Abroms,* 947 F.2d 1241, 1246 (5th Cir.1991); *United States v. Nixon,* 816 F.2d 1022, 1029 (5th Cir.1987); *United States v. Thompson,* 637 F.2d 267, 268 (5th Cir.1981); *United States v. Bell,* 623 F.2d 1132, 1134 (5th Cir.1980); *United States v. Forrest,* 623 F.2d 1107, 1113 (5th Cir.1980); *United States v. Damato,* 554 F.2d 1371 (5th Cir.1977); *United States v. Parr,* 516 F.2d 458, 470 (5th Cir.1975); *Brooks v. United States,* 253 F.2d 362, 364 (5th Cir.1958); *United States v. Giacalone,* 587 F.2d 5, 6 (6th Cir.1978); *United States v. Bullock,* 857 F.2d 367, 371 (7th Cir.1988); *United States v. Watson,* 623 F.2d 1198, 1201 (7th Cir.1980); *United States v. Smith,* 538 F.2d 159, 163 (7th Cir.1976); *United States v. Demopoulos,* 506 F.2d 1171, 1176 (7th Cir.1974); *United States v. Brimberry,* 779 F.2d 1339, 1349 (8th Cir.1985); *United States v. Bednar,* 728 F.2d 1043, 1047 (8th Cir.1984); *United States v. Armilio,* 705 F.2d 939, 942 (8th Cir.1983); *United States v. Ostertag,* 671 F.2d 262, 265 (8th Cir.1982); *United States v. Jackson,* 640 F.2d 614, 616 n. 2 (8th Cir.1981); *United States v. Beitling,* 545 F.2d 1106 (8th Cir. 1976); *United States v. Phillips,* 540 F.2d 319, 328 (8th Cir.1976); *Tasby v. United States,* 504 F.2d 332, 337 (8th Cir.1974); *United States v. Koonce,* 485 F.2d 374, 380 (8th Cir.1973); *United States v. Larranaga,* 787 F.2d 489, 494 n. 1 (10th Cir.1986); *United States v. Girdner,* 773 F.2d 257, 259 (10th Cir.1985); *United States v. Masters,* 484 F.2d 1251, 1254 (10th Cir.1973); *Travis v. United States,* 123 F.2d 268, 270 (10th Cir. 1941) (involving predecessor statute); *United States v. Dekle,* 768 F.2d 1257, 1262 (11th Cir.1985); *United States v. Molinares,* 700 F.2d 647, 653 (11th Cir.1983).

In quietly burying our rule that a judge decides the materiality of perjured statements under 18 U.S.C. § 1621, *see United States v. Clark,* 918 F.2d 843, 845–46 (9th Cir.1990); *Vitello v. United States,* 425 F.2d 416, 423 (9th Cir.1970), the majority generates yet another conflict—this time with six other circuits. *See United States v. Alu,* 246 F.2d 29, 32 (2d Cir.1957); *Forrest,* 623 F.2d at 1113; *United States v. Gremillion,* 464 F.2d 901, 904 (5th Cir.1972); *United States v. Edmondson,* 410 F.2d 670, 674 n. 3 (5th Cir.1969); *Barnes v. United States,* 378 F.2d 646, 650 (5th Cir.1967); *Giacalone,* 587 F.2d at 6; *United States v. Rivera,* 448 F.2d 757, 758 (7th Cir.1971); *United States v. Parker,* 447 F.2d 826, 830 (7th Cir.1971); *United States v. Parker,* 244 F.2d 943, 950 (7th Cir.1957); *Masinia v. United States,* 296 F.2d 871, 874 (8th Cir.1961); *Dolan v. United States,* 218 F.2d 454, 457 (8th Cir.1955); *Masters,* 484 F.2d at 1254.

The disruption is greater still. I've only mentioned five statutes—ones where our circuit has already held who decides materiality. But the majority's theory easily covers all statutes that contain a similar materiality requirement. How many other criminal stat-

utes punish those who make material false statements to a government agency? My research discloses forty-three that have explicit materiality requirements [3] and another

3. *See* 7 U.S.C. § 13(a)(3) (felony to knowingly make statement that "was false or misleading with respect to any material fact" in report required by statute or futures association); 8 U.S.C. § 1160(b)(7) (penalizing knowing and willful false statement of material fact in application for status of special agricultural worker); 8 U.S.C. § 1225a(c)(6) (penalizing knowing and willful false statement of material fact in application for special status by virtue of entering U.S. before Jan. 1, 1982); 8 U.S.C. § 1325(a) (penalizing improper entry into U.S. by virtue of willful false statement of material fact); 10 U.S.C. § 931 (perjury in military proceeding); 18 U.S.C. § 152 (maximum five year sentence for knowing and fraudulent receipt of material amount of property with intent to defeat bankruptcy code); 18 U.S.C. § 542 (maximum prison term of two years for entry of goods by means of material false statement); 18 U.S.C. § 1919 (maximum one year prison term for false statement of material fact knowingly made to obtain unemployment compensation for federal service); 19 U.S.C. § 1629(f)(2) (maximum five year prison term for any person who knowingly and willfully covers up a material fact from customs official); 19 U.S.C. § 1919 (maximum two year prison term for knowingly making false statement of material fact with intent to influence tariff adjustment); 19 U.S.C. § 2316 (maximum one year prison term for knowingly making false statement of material fact when seeking relief from injury under section 2311); 19 U.S.C. § 2349 (maximum two year prison term for making false statement of material fact for purposes of obtaining relief from injury under Trade Act of 1974); 20 U.S.C. § 1097(b) (maximum one year prison term for knowingly and willfully concealing material information in connection with assignment of federally insured student loan); 20 U.S.C. § 4442(c)(1) (maximum one year prison term for knowingly making false statement of material fact in seeking cultural and art development grants); 22 U.S.C. § 618(a)(2) (maximum six month prison term for willfully making false statement of material fact in registering to distribute political propaganda); 22 U.S.C. § 2778(c) (maximum 10 year prison term for willfully making untrue statement of material fact in report required for control of arms exports and imports); 26 U.S.C. § 7206(1) (maximum three year prison term for willfully making false declaration as to material matter regarding income taxes when under penalty of perjury); 26 U.S.C. § 9012(d) (maximum five year prison term for knowingly and willfully making misrepresentation of material fact during examination of campaign's matching payment account); 29 U.S.C. § 439(b) (maximum one year prison term for person who knowingly makes false statement of material fact in report required under section 431); 29 U.S.C. § 461(d) (maximum one year prison term for knowing misrepresentation of material fact in report labor organization must

file once it assumes trusteeship over subordinate organization); 31 U.S.C. § 5324(b)(2) (prohibiting material omission or misstatement of fact in report on monetary instruments transactions); 42 U.S.C. § 290cc–32 (maximum five year prison term for knowingly making false statement of material fact in sale to state for items or services funded by federal government under Medicare); 42 U.S.C. § 300d–20 (same); 42 U.S.C. § 300e–17(h) (maximum five year prison term for knowingly and willfully making false statement of material fact in an HMO's financial disclosure); 42 U.S.C. § 300w–8(1) (maximum five year prison term for knowingly and willfully making false statement of material fact in sale to state of items or services subsidized by federal government); 42 U.S.C. § 300x–56(b) (same); 42 U.S.C. § 300dd–9 (same—under formula grants to states for care of AIDS patients); 42 U.S.C. § 300ee–19(b) (same—under funds for AIDS prevention); 42 U.S.C. § 707(a)(1) (same—under funds for social security); 42 U.S.C. § 1320a–7b(a)(1) (maximum five year prison term for knowingly and willfully making false statement of material fact in application for payments in federally-approved plans for medical assistance); 42 U.S.C. § 1383a(a)(1) (maximum one year prison term for knowingly and willfully making false statement of material fact in application for Supplemental Security Income benefits); 42 U.S.C. § 1973i (penalizing knowingly false information for purpose of establishing eligibility to vote); 42 U.S.C. § 3795a (penalizing knowing and willful misstatement or concealment of material fact in any application or record required under chapter); 42 U.S.C. § 6928(d)(3) (maximum two year prison term for knowingly making false material statement in compliance documents); 42 U.S.C. § 6992d(b)(2) (maximum two year prison term for knowingly making false material statement in compliance documents); 42 U.S.C. § 7413(c)(2) (maximum two year prison term for knowingly making false material statement in documents required under chapter); 46 U.S.C. § 1171(b) (any person who, in application for financial aid under merchant marine act, willfully makes untrue statement of material fact is guilty of misdemeanor); 46 U.S.C. § 31306(d) (maximum five year prison sentence for knowingly making false statement of material fact in declaration of citizenship under Shipping Act); 46 U.S.C. App. § 839 (maximum five year prison term for knowingly making false statement of material fact to secure required approval of Secretary of Transportation); 49 U.S.C.App. § 1472 (maximum three year prison term for knowingly and willfully falsifying or concealing a material fact to obtain FAA certificate); 50 U.S.C. § 855 (maximum five year prison term for willfully making false statement of material fact in registration statement); 50 U.S.C.App. § 1193(h) (maximum two year prison term for knowingly furnishing information that is false or misleading

fifty-four where such a requirement is probably implied.[4] And, of course, other courts

in any material respect regarding renegotiation of airplane contracts).

4. *See* 7 U.S.C. § 614(b–3)(3) (penalizing those who make false statement in application for tax-payment warrant); 7 U.S.C. § 2028(d) (punishing those who obtain funds from a Puerto Rico block grant "by ... false statement"); 7 U.S.C. § 6407(e) (barring "false or unwarranted statements" regarding fluid milk products); 12 U.S.C. § 1782(a)(3) (penalizing false statement in administration of insurance fund); 13 U.S.C. § 213 (penalties for perjury); 12 U.S.C. § 1847 (penalizing false entries in book, report, or statement of bank holding company); 15 U.S.C. § 50 (penalizing false statement to FTC); 15 U.S.C. § 645 (offenses and penalties for certain crimes related to commerce and trade); 15 U.S.C. § 714m (punishing knowingly false statement to Commodity Credit Corporation); 15 U.S.C. § 1825(a)(2)(B) (penalizing false statement in report required by Horse Protection Act); 16 U.S.C. § 831t(b) (penalizing false statement to or on behalf of the Tennessee Valley Authority); 18 U.S.C. § 287 (penalizing false claims against U.S. government); 18 U.S.C. § 288; (penalizing false claims for postal losses); 18 U.S.C. § 289 (penalizing false claims for pensions); 18 U.S.C. § 924 (penalizing knowing false statement in information gun dealers must provide); 18 U.S.C. § 1011 (penalizing knowing false statement in sale of mortgage to federal land bank); 18 U.S.C. § 1012 (penalizing intentional false entry in book of Department of Housing and Urban Development); 18 U.S.C. § 1014 (penalizing false statement to influence federal loan or credit agency); 18 U.S.C. § 1015 (penalizing false statement in naturalization proceeding); 18 U.S.C. § 1018 (penalizing public official who knowingly falsifies official certificate or writing); 18 U.S.C. § 1020 (penalizing false statement regarding highway projects); 18 U.S.C. § 1026 (penalizing false statement regarding farm indebtedness for purpose of influencing Secretary of Agriculture); 18 U.S.C. § 1027 (penalizing false statement in documents required by ERISA); 18 U.S.C. § 1158 (penalizing false statement to secure Indian Arts & Crafts Board trademark); 18 U.S.C. § 1542 (penalizing willful and knowing false statement in passport application); 18 U.S.C. § 1546 (penalizing false statement in immigration documents); 18 U.S.C. § 1712 (penalizing falsification of postal returns to increase compensation); 18 U.S.C. § 1920 (penalizing false statement to obtain Federal employees' compensation); 18 U.S.C. § 2386 (penalizing willful false statement when registering certain organizations); 18 U.S.C. § 2388(a) (penalizing willful false statement with intent to interfere with armed forces during war); 18 U.S.C. § 2424 (penalizing knowing and willful false statement about alien procured or maintained for immoral purposes); 22 U.S.C. § 1980(g) (penalizing false statement in seeking compensation for loss or destruction of

have already held that materiality in a number of these statutes should be decided by the judge,[5] and will no doubt interpret the

commercial fishing vessel or gear); 22 U.S.C. § 2197(n) (penalizing false statement regarding federal insurance of investment in foreign nations); 26 U.S.C. § 7232 (penalizing false statement regarding registration as manufacturer or dealer in gasoline); 29 U.S.C. § 666(g) (penalizing false statement in health and safety report required under this chapter); 30 U.S.C. § 820 (penalizing false statement in document required under subchapter governing mine safety and health); 30 U.S.C. § 941 (penalizing false statement or representation in seeking benefits under subchapter governing mine safety and health); 30 U.S.C. § 1232(d)(1) (penalizing false statement in report submitted with reclamation fee); 30 U.S.C. § 1268(g) (penalizing false statement in documents required by Federal program or Federal Lands program regarding surface mining); 31 U.S.C. § 5322 (penalizing willful violations of subchapter); 33 U.S.C. § 931 (penalizing false statement for purpose of obtaining workers' compensation benefit); 33 U.S.C. § 990(b) (penalizing false statement to corporation governing Saint Lawrence Seaway); 33 U.S.C. § 1319(c)(2) (penalizing knowing false statement in record required by chapter on navigation and navigable waters); 38 U.S.C. § 1987 (penalizing knowing false statement in application, waiver of premium, or claim for benefits, for National Service Life Insurance or U.S. Government life insurance); 40 U.S.C. § 883(b) (penalizing false statement to Pennsylvania Avenue Development Corp.); 42 U.S.C. § 408 (penalizing false statement · to obtain social security benefits); 42 U.S.C. § 1761(*o*) (penalizing false statement in connection with summer food service programs for children at service institutions); 42 U.S.C. § 1973i(c) (penalizing knowing false information for purpose of establishing eligibility to vote); 42 U.S.C. § 3220 (penwing false statement to obtain financial assistance or defraud Secretary of Department of Health and Human Services); 42 U.S.C. § 4912(c) (penalizing false statement in documents filed pursuant to chapter's noise control requirements); 43 U.S.C. § 1350(c) (penalizing knowing false statement in application required under subchapter on submerged public lands); 45 U.S.C. § 231(*l*)(a) (penalizing knowing false statement in report required by subchapter on Rail Road Retirement Accounts); 45 U.S.C. § 359(a) (penalizing knowing false statement to obtain unemployment insurance); 49 U.S.C. Appx. § 2216 (penalizing U.S. officials who knowingly make false statement regarding projects submitted for approval of Secretary of Transportation).

5. For cases assigning materiality to the judge in statutes with express materiality requirements, see *United States v. Key*, 859 F.2d 1257 (7th Cir.1988) (construing 18 U.S.C. § 152); *United States v. Marachowsky*, 201 F.2d 5 (7th Cir.1953)

others consistent with their prevailing case law.

### D. *Misinterpretation of 18 U.S.C. § 1001*

The majority paints itself into a solitary corner within the federal judiciary by adopting a peculiarly narrow and fact-bound interpretation of 18 U.S.C. § 1001's materiality requirement. According to the majority, "It would seem that a factual inquiry would nearly always be necessary to determine what makes a difference to the decisionmaking body." Majority op. at 948. Thus, the majority would require "testimony of department officials in order to determine whether the block checked on line 303 of the settlement statement would tend to influence the agency's decision to insure the loan." *Id.* at 950.

Every legal principle must, of course, be factually anchored to the case where it is applied. But the question under section 1001 is not whether a particular statement in a specific case actually influenced (or could have influenced) the agency's decision, but whether the statement in question had the *"intrinsic capability* of influencing or affecting the agency's or department's decision." *Valdez,* 594 F.2d at 728 (emphasis added). Thus, the Sixth Circuit has held, "The fact that the misstated amounts are relatively small when compared with total [sums in question] is not particularly relevant to the issue of materiality. Instead, the relevant inquiry is whether the false information is of the type that is capable of influencing a decision of an agency, as opposed to an examination of the magnitude of the falsehood." *Hughes v. United States,* 899 F.2d 1495, 1499 (6th Cir.1990). And the Eleventh Circuit has framed the question as whether the agency "routinely utilizes the information" in carrying out its function. *United States v. Gaf-*

*yczk,* 847 F.2d 685, 691 (11th Cir.1988). The Fifth Circuit has noted that "a statement may be material even though the Government does not actually rely on it" if "disclosure of the truth could have provoked the agency to action." *United States v. McIntosh,* 655 F.2d 80, 83 (5th Cir.1981); *see also United States v. Keefer,* 799 F.2d 1115, 1127 (6th Cir.1986) ("[T]he test for materiality is not whether the agency *actually* relied on the false statement, but whether the statement was *capable of influencing,* or had a natural tendency to influence, the agency's decision."); *United States v. Jones,* 464 F.2d 1118, 1123 (8th Cir.1972) (test is "[t]he potential for an adverse effect upon the exercise of a government function"). Most notably, the Supreme Court told us in *Kungys* that materiality turns on "whether the misrepresentation or concealment was *predictably capable of affecting,* i.e., *had a natural tendency to affect,* the official decision." 485 U.S. at 771, 108 S.Ct. at 1547 (emphasis added).

In contrast to this body of authority, the majority focuses narrowly on the particular circumstances of this case, noting, for example, that "[s]ome of the amounts written on line 303 were trivial." Majority op. at 950. Under the majority's tight focus, materiality must be determined form by form, transaction by transaction, count by count.

This is too fact-specific an inquiry. The proper question is whether false entries on a key line of a government-approved loan application have "a natural tendency to affect" the agency's decision, regardless of the amount in question. Plainly, the answer is yes. While the majority opines that "the form and the certification are very poorly designed" to "ferret out situations where the buyer might be serving as a stand-in for the seller or another person and did not intend to keep the house," Majority op. at 945, the

(same); *United States v. Brown,* 763 F.2d 984 (8th Cir.1985) (construing predecessor to 42 U.S.C. § 1320a–7b).

For cases assigning materiality to the judge in statutes with an implied materiality requirement, see *United States v. Elkin,* 731 F.2d 1005 (2d Cir.1984) (construing 18 U.S.C. §§ 287, 1001); *United States v. Cleary,* 565 F.2d 43 (2d Cir.1977) (construing 18 U.S.C. § 1014); *United States v. Whaley,* 786 F.2d 1229 (4th Cir.1986) (construing 18 U.S.C. § 1014); *United States v. Lueben,* 838

F.2d 751 (5th Cir.1988) (construing 18 U.S.C. §§ 1014, 1001); *United States v. Thompson,* 811 F.2d 841 (5th Cir.1987) (same); *United States v. Shriver,* 842 F.2d 968 (7th Cir.1988) (construing 18 U.S.C. § 1014); *United States v. Kalagian,* 957 F.2d 527 (8th Cir.1992) (construing 42 U.S.C. § 408); *United States v. Pruitt,* 702 F.2d 152 (8th Cir.1983) (construing § 287); *Johnson v. United States,* 410 F.2d 38 (8th Cir.1969) (construing § 287); *United States v. Haddock,* 956 F.2d 1534 (10th Cir.1992) (construing 18 U.S.C. § 1014).

form serves precisely this purpose. Whether the amount in question is $31 or $31,000, to make line 303 accurate, Gaudin would have had to strike out the word "BORROWER," which follows the boxes marked "TO" and "FROM," and write in "SELLER." The form can be truthfully signed without such an interlineation only when there is a bona fide buyer and seller. By engineering a series of sham transactions, Gaudin was boxed into an unpalatable choice: He could either sign the form as printed and thereby tell a lie, or make telltale modifications to the form that "could have provoked the agency to action." *McIntosh,* 655 F.2d at 83.[6]

Whether the misstatements were material, then, calls for a generalized determination about whether claiming a party will pay or receive a sum (large or small)—when in fact it won't—is the type of representation where "a truthful answer could help the inquiry, or a false response hinder it." *United States v. Berardi,* 629 F.2d 723, 728 (2d Cir.1980) (noting also that "these effects are weighed in terms of potentiality rather than probability"). Like relevance and pertinency, *cf. Sinclair v. United States,* 279 U.S. 263, 298–99, 49 S.Ct. 268, 273–74, 73 L.Ed. 692 (1929), this is the sort of preliminary determination that does not vary significantly with the facts of each individual transaction and therefore does not require a jury finding under *Winship.*

As the Sixth Circuit has noted, "[although the materiality of a statement rests upon a factual evidentiary showing, the ultimate finding of materiality turns on an interpretation of substantive law." *Abadi,* 706 F.2d at 180. To make this determination, the district court must understand the workings of the federal agency and the role the false statement plays (or could play) in its decisionmaking process. This is not a pro forma inquiry, to be sure. For example, if the agency requests information about the bor-

rower's ethnic background, the district court would have to consider whether this would be relevant to the agency's mission. Where the loan program provides a preference for certain ethnic or other groups (*e.g.,* Native Americans, veterans), the misinformation would be material because it could well influence the agency's decision. But if the information is being collected for statistical purposes or as a courtesy to another agency (*e.g.,* the Civil Rights Commission), a court might well conclude that the information is not material because the misstatement does not affect the agency's mission in any meaningful way. In either event, however, the inquiry calls for the kind of parsing of an agency's statutory delegation of authority that is not normally subject to proof before a jury.

## II

Even if the majority were right that materiality is a question of fact, Gaudin's conviction would nevertheless have to be affirmed because he never objected to the judge's materiality instruction.[7] Consequently, we cannot disturb the conviction without finding plain error—something the majority finds far too readily.

In *United States v. Olano,* —— U.S. ——, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Court interpreted Fed.R.Crim.P. 52(b) as imposing a three-prong test. First, there must have been a violation of a rule that was either not waived or not waivable; second, the error must have been "plain"; and third, it must have affected "substantial rights." *Id.* at ——, 113 S.Ct. at 1777–78.

Assuming there was error at all here, I agree it was not waived, but merely "forfeited." *Id.* I also agree that, in light of our earlier ruling on *Valdez,* the error was "plain." *Id.* Thus my disagreement with the majority turns on the third require-

---

6. The majority finds it "significant that the only possible blocks to be checked are cash 'to' or 'from' the 'borrower.'" Majority op. at 945. I don't see why. After all, by signing a government form, a party verifies the truth not merely of the information it writes or types in, but also of the printed matter the party adopts by placing a check mark or an amount in a relevant blank. Thus, for example, by filling in "$2000" on line 24a of Treasury Form 1040 (1993), a taxpayer is

not merely verifying that he paid exactly $2000 into *an* account. He is also verifying that the account is one he reasonably believes qualifies as an IRA. Similarly, line 303, in our case, makes a liar of anyone who swears that any amount is coming to or from him, unless he is in fact the borrower.

7. I do not disagree that if there was error, it was harmful. *See* Majority op. at 951–952.

ment—that "substantial rights" have been affected.

*Olano* holds that a defendant, in showing an error affected "substantial rights," generally bears the burden of establishing that the error affected the outcome of the case. —— U.S. at ——, 113 S.Ct. at 1778. "[F]ederal courts have consistently interpreted the plain-error doctrine as requiring an appellate court to find that the claimed error ... had [a] prejudicial impact on the jury's deliberations." *Id.* (quoting *United States v. Young,* 470 U.S. 1, 17 n. 14, 105 S.Ct. 1038, 1047 n. 14, 84 L.Ed.2d 1 (1985)).

Under *Olano,* where the error consists of withdrawing an element from jury deliberation, the defendant has the burden of proving that the verdict would have been different if the element in question had been submitted to the jury. To show this, defendant must prove, at the very least, that a rational jury could have acquitted him by finding a reasonable doubt as to materiality.[8] In most cases, that burden will not be difficult to meet, for defendant need only show that a rational jury could have come out the other way. Defendant, however, cannot meet that burden where the evidence on the issue is so clearcut that a rational jury could only have decided the issue in favor of the prosecution.[9]

There can be no rational doubt about how a jury would have come out here, at least as to some of the counts. Clearest perhaps are counts 44–46 "where the statements concern appraisals of market value." Majority op. at 951. No rational jury could have concluded that false statements as to market value did not have "a natural tendency to affect[ ] the official decision" whether to insure a loan. *Kungys,* 485 U.S. at 771, 108 S.Ct. at 1546–47. Equally clear-cut, even under the majority's doubtful analysis, are counts where the amounts entered on line 303 involved thousands of dollars.[10] Finally, under the prevailing interpretation of section 1001, pursuant to which it doesn't matter what dollar amount was entered on line 303, *see* pp. 961–962 *supra,* no rational jury could conclude that a signed form indicating that the money in question (whatever its amount) goes to or comes from the borrower (when in fact it went to or came from Mr. Gaudin) was not a material misstatement.

The majority avoids a case-specific inquiry into prejudice by doing precisely what *Olano* said we should *not* do—creating a per se rule for a vague new category it describes as "fundamental structural error." [11] Majority op. at 952. It's unclear, however, why the error here is any more fundamental or structural than that in *Olano.* After all, the error here affected only one of several elements of the offense while the error in *Olano* (the introduction of two additional persons into

---

8. Quite possibly, defendant must show more, namely that a rational jury *would* have acquitted him based on the missing element. The difference between could and would is substantial. To show that a rational jury could have acquitted, defendant must only show that, if it had considered all the evidence presented as to materiality, the jury might rationally have found against the prosecution on that score. To show the jury would have acquitted, defendant has to show that, more likely than not, the jury would have ruled in his favor. The argument for the more stringent standard is that it is defendant who must carry the burden of showing that the error made a difference in his case. I would adopt the more lenient standard largely out of deference to our sister circuits which seem to hold that error in these circumstances will be deemed plain in most cases. *See* p. 964 *infra.*

9. I am aware of the jury's de facto power of nullification. However, I don't believe the defendant may rely on the possibility of such lawless action in establishing that the error in question affected his substantial rights.

10. That would pertain to counts two ($7,022.64), three ($6,860.19), six ($7,229.90), ten ($7,708.81) and twenty-seven ($3,300.07).

11. In rejecting a per se approach, the Supreme Court was no doubt sensitive to the perverse incentives such a rule would create. Whenever we reverse for an error not raised below, we tempt defense counsel not to raise the issue before the district court, hoping to get a reversal on appeal and a second shot at an acquittal on retrial. A per se approach exacerbates this problem because it makes reversal on appeal automatic. The incentive to ambush the district judge becomes very great because defendant will be certain to get a new trial.

This may well have happened here. Despite our clearly-established law on this subject, as announced 15 years ago in *Valdez,* defense counsel did not raise the issue in time for the district court to fix the problem.

the jury room) affected every single aspect of the jury's deliberations. One could say with just as much conviction that what happened in *Olano* amounts to "fundamental structural error." We undermine *Olano* severely when we create such a nebulous exception to the requirement that we weigh the relevant facts and circumstances before invoking the plain error doctrine.

The majority's reliance on *Sullivan v. Louisiana*, —— U.S. ——, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), is entirely misplaced because *Sullivan* deals with harmless error, not plain error. As the majority recognizes, it is more difficult to find that an error is plain rather than merely harmful. Majority op. at 951. *Sullivan* thus provides no authority for the majority's undercutting of *Olano*.

By effectively holding that *Winship* error is always plain, the majority creates a conflict with six other circuits, which have held that *Winship* error justifies reversal in most—but not all—circumstances. *See United States v. Golomb*, 811 F.2d 787, 793 (2d Cir.1987) ("In *general*, failure to instruct the jury on an essential element of the offense constitutes plain error.") (emphasis added); *United States v. Kerley*, 838 F.2d 932, 939 (7th Cir.1988) (same); *Government of Virgin Islands v. Brown*, 685 F.2d 834, 839 (3d Cir.1982) ("The omission of an essential element ... *ordinarily* constitutes reversible error.") (emphasis added); *United States v. Brown*, 616 F.2d 844, 846 (5th Cir.1980) (denying that there is a "rule that failure specifically to instruct on any single essential element of a crime per se constitutes plain error"); *United States v. Baker*, 693 F.2d 183, 187 (D.C.Cir.1982) (finding that if there was *Winship* error, it was not plain); *United States v. Polowichak*, 783 F.2d 410, 417 (4th Cir.1986) (distinguishing error here from finding of no plain error in *Baker*). Once again, the majority's ruling is out of step with the collected wisdom of most of the circuits that have ruled on this issue.[12]

## III

It is difficult to estimate the full impact of today's opinion, but it will not be trivial. First, the effect on this defendant. The majority remands for further proceedings without explaining what they will be. Presumably the majority is relying on a small portion of the panel opinion which concludes that Gaudin may be retried because there was sufficient evidence of materiality on all counts. 997 F.2d at 1273.

More serious is the effect on others already convicted under 18 U.S.C. § 1001 and the four other statutes where we had deemed materiality a question of law. *See* pp. 956–959 *supra*. Any defendants whose convictions are now on appeal—whether for violating section 1001 or for perjury, false statements in tax returns, false statements to grand juries or false statements in applications for payments in federally-approved plans for medical assistance—will obviously get the benefit of today's ruling. *See Griffith v. Kentucky*, 479 U.S. 314, 322, 107 S.Ct. 708, 713, 93 L.Ed.2d 649 (1987) ("failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication"); *see also Powell v. Nevada*, —— U.S. ——, ——, 114 S.Ct. 1280, 1282–83, 128 L.Ed.2d 1 (U.S.1994). This is true even if the defendants didn't object below, since the majority has deemed this type of error both harmful and plain.

The same is true of the many defendants whose convictions have become final but who are still incarcerated under these statutes. *Winship* error, after all, implicates fundamental principles of due process and casts doubt on the fairness of the proceedings. A conviction resting on such an error was probably "imposed in violation of the Constitution or laws of the United States," and thus is subject to collateral attack under 28 U.S.C. § 2255. As happened after *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), a host of convictions

---

**12.** The panel may also be stepping on the Supreme Court's toes in another way. The Court has suggested *Winship* error is not harmful per se: In *Carella v. California*, 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989), after finding a *Winship* error, the Court remanded for the district court to do a harmless error analysis—an unnecessary step if the Court believed *Winship* error was harmful per se. And since the test for plain error is tougher than that for harmless error—as the majority itself acknowledged, Majority op. at 951—we know an error that's not harmful per se a fortiori can't be plain per se.

will be routinely vacated for what will come to be known as *Gaudin* error. *See, e.g., United States v. Mitchell,* 867 F.2d 1232 (9th Cir.1989) (deeming *McNally* fully retroactive and applying it on collateral review to vacate final convictions); *see also Chambers v. United States,* 22 F.3d 939, 941 (9th Cir.1994) (giving habeas petitioner benefit of retroactive application of *United States v. X–Citement Video, Inc.,* 982 F.2d 1285 (9th Cir. 1992), which struck down 18 U.S.C. § 2252 as unconstitutional).

Then there are those defendants who've finished serving sentences for false statement offenses but remain under a legal disability. If they're still on probation, they meet the in custody requirement and can challenge the conviction under section 2255. *See Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). Even if they're no longer in custody for the false statement offense, they may have other grounds to attack that conviction: For instance, if a defendant's sentence for a subsequent offense is enhanced because he was previously convicted of a false statement crime, he may be able to attack the prior conviction once he is in custody for the subsequent crime. *See Maleng v. Cook,* 490 U.S. 488, 493, 109 S.Ct. 1923, 1926–27, 104 L.Ed.2d 540 (1989); *Feldman v. Perrill,* 902 F.2d 1445, 1447–49 (9th Cir.1990).[13]

Finally, there are those defendants who, though no longer in custody for a false statement or related offense, may still suffer collateral consequences from their convictions—such as not being able to engage in certain businesses, vote, hold public office or serve as jurors. *Maleng,* 490 U.S. at 491–92, 109 S.Ct. at 1925–26, 104 L.Ed.2d 540 (1989). Even these defendants may find their way to court. They might, for example, file a writ coram nobis, which "is available to challenge the validity of a conviction, even though the sentence has been fully served." *Hirabayashi v. United States,* 828 F.2d 591, 604 (9th

Cir.1987).[14] Because this writ is normally used to correct errors of fact, *United States v. Mayer,* 235 U.S. 55, 69, 35 S.Ct. 16, 19–20, 59 L.Ed. 129 (1914), these claimants may well rely on the majority's ruling that materiality is an issue of fact that was never resolved against them by a jury.

### Conclusion

The majority opinion wreaks havoc with the administration. of the federal criminal laws in this circuit. It refuses to be bound by Supreme Court authority and shrugs off the wisdom of every other federal court of appeals. Its effects will be felt for many years. Because the reasons advanced by the majority don't justify this major disruption, I respectfully dissent.

---

**13.** An exception to this rule, recently articulated by the Supreme Court, is that defendants in federal sentencing proceedings generally may not collaterally attack prior state convictions used to enhance their sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e), unless the challenge is based on the Sixth Amendment right to counsel. *See Custis v. United States,* —— U.S. ——, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994).

**14.** Though Fed.R.Civ.P. 60(b) abolished this writ in civil cases, the writ is still available in criminal cases. *United States v. Morgan,* 346 U.S. 502, 505 n. 4, 74 S.Ct. 247, 249 n. 4, 98 L.Ed. 248 (1954); *Hirabayashi,* 828 F.2d at 604.