**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Joseph V. NASH, Defendant–Appellant.**

Nos. 91–50760, 92–50310, 92–50374 and 93–50694.

United States Court of Appeals, Ninth Circuit.

Submitted * June 6, 1994.

Withdrawn from Submission Dec. 21, 1994.

Resubmitted Aug. 17, 1995.

Filed Aug. 24, 1995.

Opinion Withdrawn Jan. 3, 1996.

Decided Feb. 6, 1996.

---

* The panel unanimously finds this case suitable for decision without oral argument pursuant to Fed. R.App.P. 34(a) and 9th Cir.R. 34.4.

Dorothy Shubin, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellee.

Joseph V. Nash, Pro per, North Las Vegas, Nevada, for defendant-appellant.

Before: FLETCHER, CANBY, and HALL, Circuit Judges.

PER CURIAM:

Joseph V. Nash was charged in a fifteen-count superseding indictment with fraudulently obtaining over $5 million in loans from three different banks. He was eventually convicted of ten counts of submitting false documents to a lending institution insured by the Federal Deposit Insurance Corporation (FDIC) in violation of 18 U.S.C. § 1014, and five counts of bank fraud in violation of 18 U.S.C. § 1344. Nash now appeals his convictions. We reverse.

## I. FACTS AND PROCEEDINGS BELOW

Nash was charged in a fifteen-count superseding indictment. Counts 1 through 4 charged Nash with submitting false tax returns to Liberty National Bank in violation of 18 U.S.C. § 1014. Nash's partnership, Nash & Company, applied to Liberty National for a $250,000 line of credit and a $250,000 loan, each of which Nash offered to guarantee personally. As part of the application process, Nash submitted his personal income tax returns for 1985 and 1986. The indictment alleged that these returns "greatly overstated [Nash's] income for [those] year[s]" and that, relying in part on the contents of these documents, Liberty National granted Nash & Company the loan and the line of credit. Nash also submitted these allegedly false tax returns to First Pacific Bank to obtain a $200,000 unsecured personal loan. This conduct formed the basis of counts 5 and 6, also charging Nash with violating 18 U.S.C. § 1014.

Counts 7 through 9 charged Nash with a scheme that began in 1985. Nash was the president and owner of First Professional Realty Company of America, Inc. In January 1985, he obtained for First Professional a $250,000 loan from Union Bank. First Professional held a promissory note from another business called TAG Properties (TAG). As of January 1985, the note obligated TAG to make three payments to First Professional of $450,000 each. To obtain the loan, Nash represented to Union Bank that First Pro-

fessional would repay the loan with the future installments on this note. Union Bank, in an effort to ensure its right to receive the proceeds, requested that Nash give the TAG promissory note to it for safekeeping. Nash gave Union Bank a document which he incorrectly represented as the TAG note.

·When Nash was later unable to repay the loan, he sought and received three extensions from Union Bank. The extensions that he received in December 1986 and June 1987 were granted in reliance upon Nash's representation that Union Bank would receive the remaining amount due when TAG made its December 16, 1987 payment to First Professional. What Union Bank did not know, however, was that TAG had paid the note in full on or about January 20, 1986. It was alleged that Nash was aware of this final payment when he sought the extension. These activities form the basis of the bank fraud charged in Count 7 of the indictment. Counts 8 and 9 charged Nash with giving false statements to the bank, consisting of the December 1986 and June 1987 misrepresentations.

Nash received one other loan during this period. In September 1986, Nash applied to Great Western Bank for a $4,360,000 loan secured by an office building he owned in Beverly Hills. He represented to Great Western that the property was fully leased and would generate enough rent to repay the loan. In support of this claim, Nash submitted two seemingly genuine lease agreements. One lease showed Revel Travel as leasing the first floor of the Beverly Hills property for $20,340 per month. In reality, Revel Travel was paying only $10,500 per month. The other lease stated that McMurtry & Bell, an insurance company, was leasing the entire second floor of the Beverly Hills property for $20,093 per month until February 1, 1988. In reality, the insurance company was leasing on a month-to-month basis and paid only $2,000 per month. Nash obtained the loan from Great Western and in return assigned to Great Western the lease proceeds from the Beverly Hills property. This conduct gave rise to counts 10 through 15 of the indictment. Counts 10 through 13 each charged Nash with bank fraud based on the

loan application, the security agreement between Nash and Great Western, the promissory note between Nash and Great Western, and the assignment of leases between Nash and Great Western. Counts 14 and 15 charged Nash with violations of 18 U.S.C. § 1014 based on the submission of the inaccurate Revel and McMurtry leases.

Nash was convicted on all fifteen counts of the superseding indictment.

## II. 18 U.S.C. § 1014 CONVICTIONS

Nash claims the district court erred when it instructed the jury that income and asset statements are material under 18 U.S.C. § 1014.

█ The government responds to Nash's claim by asserting that materiality is not an element of a § 1014 violation. Section 1014 provides:

[w]hoever knowingly makes any false statement or report ... for the purpose of influencing in any way the action of ... any institution the accounts of which are insured by the Federal Deposit Insurance Corporation, ... upon any application ... or loan, or any change or extension of any of the same, ... shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1014. Although the statute does not expressly require the false statements to be material, we have previously stated that materiality is an element of the offense. *United States v. Hutchison,* 22 F.3d 846, 851 (9th Cir.1993) (violation of § 1014 requires proof that defendant "made a knowing, false, *material* statement to the bank for the purpose of influencing its action") (emphasis added); *Theron v. United States Marshal,* 832 F.2d 492, 496–97 (9th Cir.1987) (essential elements of § 1014 violation include knowingly making a "false statement as to a material fact," where a fact is material if it "has the capacity to influence the lending institution"), *cert. denied,* 486 U.S. 1059, 108 S.Ct. 2830, 100 L.Ed.2d 930 (1988). Our circuit is not alone in taking this position. *See, e.g., United States v. Holland,* 992 F.2d 687, 690 (7th Cir.1993) ("[a]lthough the statute does not specifically state that materiality is to be

considered, ... materiality of the false statements is also an element of the offense"); *United States v. Haddock,* 956 F.2d 1534, 1549 (10th Cir.), *cert. denied,* 506 U.S. 828, 113 S.Ct. 88, 121 L.Ed.2d 50 (1992); *United States v. Thompson,* 811 F.2d 841, 844 (5th Cir.1987).

■ The jury instructions given in this case followed this approach and required the government to prove materiality. The instructions, however, advised the jury that "false statements of income and assets are material for purposes of these instructions."[1] In light of recent Supreme Court precedent, it is now clear that this instruction was erroneous.

In *United States v. Gaudin,* —— U.S. ——, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), the Supreme Court held that the question of materiality under 18 U.S.C. § 1001, another false statement statute, was a mixed question of law and fact for the jury, and not the court, to decide. *Id.* at —— – ——, 115 S.Ct. at 2314–20. The Court made clear that because materiality was an element of the offense,[2] and because defendants have a right to have all elements proved to the jury beyond a reasonable doubt, it was error to take the resolution of this particular element away from the jury. *Gaudin*'s reasoning appears to admit of no exception that would suggest that materiality under § 1014 is nonetheless a question of law. We therefore hold that the district court erred in instructing the jury that false statements of income and assets were material as a matter of law.

1. Other instructions seemingly advise the jury that it may decide the entire question of materiality. At best, these additional instructions render the instructions as a whole ambiguous and thus they do not remedy the problem created by the instruction quoted in the text. *United States v. Washington,* 819 F.2d 221, 226 (9th Cir.1987) ("a conviction should not rest on ambiguous and equivocal jury instructions on a basic issue").

2. In fact, the Court in *Gaudin* assumed without deciding, on the basis of a concession by the government, that materiality was an element of a § 1001 violation. *See Gaudin,* at ——, 115 S.Ct. at 2313; *id.* at ——, 115 S.Ct. at 2320 (Rehnquist, C.J., concurring). In light of our holding, above, that materiality is in fact an element of the government's case in a § 1014 prosecution,

■ Because Nash did not object to the instruction in dispute, our review is for plain error. *See United States v. Kessi,* 868 F.2d 1097, 1102 (9th Cir.1989). However, "[w]hen a defendant has not been accorded his Fourth and Sixth Amendment rights to a jury determination of the existence of an essential element of the crime, we conclude that the error meets that standard." *United States v. Gaudin,* 28 F.3d 943, 952 (9th Cir. 1994) (en banc), *aff'd,* —— U.S. ——, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995); *see also Gaudin,* —— U.S. at ——, 115 S.Ct. at 2320 (Rehnquist, C.J., concurring) (on appeal to the Supreme Court, government did not challenge Ninth Circuit holding that instructional error "was structural and plain"). We therefore have the discretion to correct the error, *see Gaudin,* 28 F.3d at 952 (citing *United States v. Olano,* 507 U.S. 725, 734–37, 113 S.Ct. 1770, 1778–79, 123 L.Ed.2d 508 (1993)), and feel compelled to exercise that discretion. Accordingly, we reverse Nash's § 1014 convictions under counts 1 through 6,[3] 8, 9, 14 and 15.[4]

### III.   18 U.S.C. § 1344 CONVICTIONS

■ Nash contends that his bank fraud convictions under 18 U.S.C. § 1344 should be reversed because the jury might have mistakenly believed it was required to find materiality as a matter of law under § 1344 as well. At trial, the jury was first instructed on the elements of 18 U.S.C. § 1344 and 18 U.S.C. § 1014 and, in the process, was instructed that both crimes had a materiality element. *See* Jury Instruction 27 (§ 1344 requires a statement that "would reasonably

*Gaudin*'s reasoning on the apportionment of tasks between the judge and jury applies fully to the present case.

3. We reject, however, Nash's contention that there was insufficient evidence to support his convictions on counts 1 through 6.

4. The government argues that Nash's § 1014 conviction as to Union Bank and Great Western should stand even if this panel concludes that materiality is a question for the jury under § 1014, because Nash was also convicted under § 1344 as to those institutions. Because we now conclude that the same instructional error affected the materiality element under § 1344, the government's argument is of no avail.

influence a bank to part with money"); Jury Instruction 39 (defining a "material" statement as one having the "capacity to influence the decision of a bank"); Jury Instruction 38 (§ 1014 requires that "the statement be material"). The jury was then told that "[f]alse statements of income and assets are material for the purposes of *these instructions.*" *See* Jury Instruction 40 (emphasis added). Nash claims the jury might have applied this last instruction, the same instruction which rendered his § 1014 convictions invalid, when finding him guilty under § 1344; this, he argues, would make the § 1344 convictions similarly infirm.

We agree. Materiality is an element of 18 U.S.C. § 1344. *Hutchison,* 22 F.3d at 851. The erroneous instruction by its terms appeared to apply to both offenses on the elements of which the jury had just been instructed. Because, as discussed above, it is plain error under *Gaudin* for a judge to abrogate a defendant's constitutional rights by instructing the jury to find an element of a crime as a matter of law, *Gaudin,* 28 F.3d at 952, we are compelled to reverse Nash's § 1344 convictions as well.

We therefore REVERSE all of Nash's convictions.

CYNTHIA HOLCOMB HALL, Circuit Judge, concurring in part and dissenting in part:

Although I concur with the majority as to the reversal of Nash's § 1014 convictions, I write separately because I am not convinced that the jury instructions which invalidated Nash's § 1014 convictions also tainted his § 1344 convictions.

The majority reasons that the jury abdicated its duty to decide the materiality element of § 1344 because the jury might have wrongly believed that Instruction 40, which admittedly required the jury to find certain statements material as a matter of law, also applied to the § 1344 counts. I do not believe the jury would be so easily confused.

Instruction 40 states: "False statements of income and assets are *material* for purposes of these instructions." Jury Instruction 40 (emphasis added). While the majority finds

fault with the words "these instructions," I think it is essential to examine first the instructions to which the jury might think to apply Instruction 40. Instruction 38 clearly listed "materiality" as an element of 18 U.S.C. § 1014, *see* Jury Instruction 38, so a reasonable juror would apply Instruction 40 to § 1014 counts. However, Instruction 27, which set forth the elements of § 1344, nowhere used the term "material"—instead, it required the jury to find that the defendant made "false statements" that "would reasonably influence a bank to part with its property." Jury Instruction 27. Thus, the jury would not normally think to apply Instruction 40—an instruction defining "materiality"—to § 1344, a crime that to a layman has no "materiality" element.

It is true that Instruction 39 read: "A statement is material for purposes of § 1014 if it has the capacity to influence a decision of the bank." Jury Instruction 39. For this to influence the jury's § 1344 analysis, however, we would have to assume that the jury noted that the Instruction 39's "capacity to influence a decision" language and the "reasonably influence a bank" element of § 1344 were similar; to assume that the jury reasoned that the "reasonably influence" element was in fact a materiality element; and further to assume that the jury disregarded Instruction 39's plain language confining the instruction's application to § 1014 by applying it to the § 1344 counts. These are assumptions I am unwilling to make.

While the majority's argument is persuasive now, on appeal, when examined by judges who know that § 1344's third element is a materiality element, the key is whether *Nash's jury* would have engaged in the elaborate chain of reasoning set forth above to reach that conclusion. I do not believe that it did. Because it did not, Nash's § 1344 convictions rest on the solid ground of a jury's factual findings. I therefore would not reverse Nash's § 1344 convictions.