UNITED STATES of America, Plaintiff–Appellee,

v.

Michael Curtis KEYS, Defendant–Appellant.

No. 93–50281.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 23, 1996.

Decided Sept. 11, 1996.

Errol H. Stambler, Los Angeles, California, for defendant-appellant.

John P. Elwood, United States Department of Justice, Washington, D.C.; Miriam A. Krinsky, Stefan D. Stein, Assistant United

States Attorneys, Los Angeles, California, for plaintiff-appellee.

Before: HUG, Chief Judge, BROWNING, FLETCHER, PREGERSON, JOHN T. NOONAN, Jr., THOMPSON, LEAVY, TROTT, T.G. NELSON, KLEINFELD, and TASHIMA, Circuit Judges.

TROTT, Circuit Judge:

█ Keys was charged with the crime of having made as a witness a false declaration in federal court in violation of 18 U.S.C. § 1623(a), also known as perjury. The statutory "materiality" element of this offense, however, was not submitted for decision to the jury, but, with the assent of both parties, to the trial judge. This practice reflected the established law of this circuit at the time of the trial. After the judgment of conviction, however, the law changed. The law now mandates that the materiality element of such crimes be decided not by the trial judge, but by the trial jury.

On appeal, Keys asks for the retroactive benefit of this change in the law, and he asks us to review his conviction for error pursuant to Fed.R.Crim.P. 52(a) as though he had objected to the handling of the materiality element. The government takes exception to this request and exhorts us instead to review for "plain error" under Fed.R.Crim.P. 52(b) as defined by the more stringent discretionary standards called for by *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In this regard, Keys and the government present us with significant questions regarding the limits of our authority as an appellate court to review a criminal judgment of conviction. We granted rehearing en banc in *United States v. Keys*, 67 F.3d 801 (9th Cir.1995), to decide these issues. We reverse and remand for a new trial.[1]

## I

## Facts

Keys was serving time in federal prison for armed bank robbery. A former DEA agent named Darnell Garcia was on trial for conspiracy and other crimes. Another prisoner testified for the prosecution against Garcia pursuant to a plea bargain. Garcia called Keys as a witness to impeach the other prisoner. Keys testified that while he and the prosecution witness had shared a cell, the witness told him he was willing to lie for the government against Garcia in exchange for leniency for himself.

Keys had previously sent a letter to Garcia, who was being held in the same facility. Keys hid the letter among some magazines he asked a guard to deliver to Garcia. A letter smuggled past prison officials to another prisoner is called a "kite." The intercepted kite lends itself to the inference that Keys conspired with Garcia to lie for him at trial. The text of the letter reads:

Hey G.,

I've got everything covered on my end and I'm ready whenever the time is right. I hope that I can really make a difference and you come out on top. Let me know how long you anticipate your thing to last, so I can figure out how long I'll be here. I'm trying to stay as long as I possibly can and try to get a lot done while I'm here. I heard that R.R. left Fri. and he's in Okla. right now. I'm also trying to get a few things from the commissary but they only let us order two cosmetics items a week. If you can hook it up right away I need you to have somebody send this girl some money upstairs, so I can have her get me everything I need from the commissary. It don't have to be nothing but twenty or fifty dollars.

That guy,

P.S. Here's her name and number: Jeanna Carson—Reg. No. 92373–012.

---

1. The three-judge panel opinion in this case found at 67 F.3d 801 (9th Cir.1995) is ordered withdrawn. Nevertheless, and with thanks to our colleagues, we draw directly from it regarding our statement of the salient facts and the issues presented by this appeal.

The guard found and photocopied this letter, and unknown to Keys, he provided a copy of it to his supervisor. On cross-examination, the prosecutor asked Keys about the kite, and he denied sending it. His denials became the subject of the false declaration charge of which he stands convicted.

## II

### Instructional Error

Counsel for both sides proposed, and the court gave from our Ninth Circuit Manual of Model Instructions, an instruction correct under the law as it then stood:

### COURT'S INSTRUCTION NO. 16

The defendant is charged in Count One of the indictment with having made a false declaration in violation of Section 1623 of title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant testified under oath before a court of the United States;

Second, the testimony was false; and

Third, the defendant knew that the testimony was false.

The instruction, No. 8.29C, did not submit the issue of the materiality of the false testimony to the jury as one of the elements which the government had to prove beyond a reasonable doubt. Yet the statute criminalizes only such false testimony as is material. The statute uses the language, "Whoever under oath ... makes any false material declaration...." 18 U.S.C. § 1623(a).

This model instruction was based on established Ninth Circuit law. We had held in *United States v. Clark*, 918 F.2d 843, 845 (9th Cir.1990), that "materiality is an issue of law for the court to decide." In *Clark*, we followed the rule set out by the Supreme Court in *Sinclair v. United States*, 279 U.S. 263, 298, 49 S.Ct. 268, 273, 73 L.Ed. 692 (1929). In accord with this understanding, the trial court found that Keys's alleged false declaration was material. No mention of this finding was made to the jury.

## III

### Analysis

### A. Application of New Rule of Law

■ In *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the Supreme Court held that "a new [constitutional] rule for the conduct of criminal prosecutions is *to be applied retroactively to all cases,* state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Id.* at 328, 107 S.Ct. at 716 (emphasis added). Embracing Justice Harlan's view, the Court said that failure to do so "would violate[ ] basic norms of constitutional adjudication." *Id.* at 322, 107 S.Ct. at 713 (citing *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982)). In the instant case, such a new rule was announced in this circuit in 1994 after the defendant's trial in 1992 and before his judgment of conviction became final. The "new rule" is that the materiality element of an allegedly actionable statement must be submitted for a finding in a jury trial to the jury, not to the court.

We announced this holding in *United States v. Gaudin,* 28 F.3d 943 (9th Cir.1994) (en banc), a case in which the defendant had been charged with making material false statements in violation of 18 U.S.C. § 1001. We held it was error for the district court to have instructed the jury that the materiality element of the charge was established as a matter of law. The Supreme Court unanimously affirmed our landmark holding in *United States v. Gaudin,* —— U.S. ——, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). The question presented as described by Justice Scalia was "whether it was *constitutional* for the trial judge to refuse to submit the question of 'materiality' to the jury"; and the answer to this question was "no." *Gaudin,* —— U.S. at ——, 115 S.Ct. at 2312 (emphasis added).

■ As our colleague Judge Kleinfeld observed in the earlier three-judge panel opinion in this case, Justice Scalia expressed the logic of the *Gaudin* Court in a syllogism:

The Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged; one of the elements in the present case is materiality; respondent therefore had a right to have the jury decide materiality.

*Keys,* 67 F.3d at 808 (citing *Gaudin,* —— U.S. at ——, 115 S.Ct. at 2314). We agree with Judge Kleinfeld's analysis that "[t]his syllogism applies with equal force to the perjury statute at issue in this case, 18 U.S.C. § 1623," *id.,* because the text of the statute renders criminal only false declarations that are "material," and because materiality contains a "factual component." *See Gaudin,* 28 F.3d at 949; *Gaudin,* —— U.S. at —— ——, 115 S.Ct. at 2318–19 (The proposition that the element of materiality in a perjury prosecution is to be decided by a judge is "contrary to the uniform general understanding."). Accordingly, we overrule our holding in *Clark* that in a perjury prosecution, materiality is a question of law for the court to determine; and we disapprove old Model Instruction No. 8.29C. Thus, under *Griffith,* Keys is entitled to the benefit of this new constitutional rule because it was announced after his trial and before his case had become final.

### B. Error for Which We Review

■ It would seem axiomatic, therefore, that we should proceed at this point using the Rule 52(a) standard of review to decide whether the application of the *Gaudin* principle to this case requires us to reverse Keys's conviction. The government suggests, however, that because he acquiesced in the use of the standard materiality instruction at his trial, the review to which he is now entitled is not under Rule 52(a), but for "plain error" under Rule 52(b) as currently defined under the stringent *Olano* standards. *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). We respectfully disagree.[2]

■ Since 1970, we have advised criminal defense counsel in this circuit that when faced with a "solid wall of circuit authority" endorsing a jury instruction, no objection to that instruction need be registered in the trial court to preserve the point on appeal should that "solid wall" suddenly crumble in the interim and render the instruction defective. As we noted,

An exception [to the instruction] would not have produced any results in the trial court. Under these circumstances were we to insist that an exception be taken to save the point for appeal, the unhappy result would be that we would encourage defense counsel to burden district courts with repeated assaults on their settled principles out of hope that those principles will be later overturned, or out of fear that failure to object might subject counsel to a later charge of incompetency.

*United States v. Scott,* 425 F.2d 55, 57–58 (9th Cir.1970) (en banc). Accordingly, we gave Scott on appeal the benefit of a new constitutional rule which was articulated after his trial but before his judgment of conviction had become final.[3]

We repeated this reassuring message in 1988 in *People of Territory of Guam v. Yang,* 850 F.2d 507 (9th Cir.1988) (en banc), and we referred in passing to our consistent application of the *Scott* "solid wall" principle "when appropriate." *Id.* at 512 n. 8. Most importantly, we explicitly held in *Yang* that "even though defense counsel did not object contemporaneously to the trial court's instruction, *we review the instruction for reversible error, rather than plain error.*" *Id.* (empha-

---

**2.** The government also argues that we must disregard this instructional error because it was "invited." We reject this contention for reasons that are apparent in our discussion of the applicability of "plain error." *United States v. Guthrie,* 931 F.2d 564, 567 (9th Cir.1991), is inapposite.

**3.** This approach in the District of Columbia Circuit is called the "supervening-decision doctrine." *United States v. Washington,* 12 F.3d 1128, 1139 (D.C.Cir.1994) ("The supervening-decision doctrine reflects the principle that it would be unfair, and even contrary to the efficient administration of justice, to expect a defendant to

sis added).[4] We described this holding as an "exception to Fed.R.Crim.P. 30" prohibiting a party from assigning as error any instruction or omission therefrom to which the party did not timely object. *Id.* We see no distinction whatsoever in the *Scott/Yang* context between not objecting on one hand, and affirmatively offering a settled model instruction on the other.[5]

Given this illuminating backdrop, two observations are pertinent. First, to subject the judgment of conviction of a defendant such as Keys, whose counsel adhered to a settled rule of law, to review for "plain error" would be unconscionable. Such a holding would render our *Scott/Yang* solid wall doctrine a hoax and be tantamount to a double-barreled message to counsel: (1) do not rely on our opinions; and (2) object to everything or your clients' arguments on appeal may be measured by a more restrictive standard.

Second, *Olano* deals with Rule 52(b) "forfeited" error. 507 U.S. at 732–35, 113 S.Ct. at 1776–78. In contrast, Rule 52(a) deals with "nonforfeited error." *Id.* at 731, 113 S.Ct. at 1776. Given our *Scott/Yang* doctrine, the validity of which we again affirm, treating Key's counsel's assent to the application of settled law as a "forfeiture" (or as "invited error" or "waiver") would be illogical and plainly unfair. To label what happened in this trial an "error" can only be appropriate after the fact and in the light of new legal developments. Without a contemporaneous error, there was nothing to forfeit, to invite, or to waive. As the Second Circuit said in *United States v. Viola,* an attorney "cannot be said to have 'forfeited a right' by not making an objection, [because] at the time of trial no legal right existed." 35 F.3d 37, 42 (2nd Cir.1994). We address on appeal such a supervening change in the law as "error," but

object at trial where existing law appears so clear as to foreclose any possibility of success.").

4. We disapprove any suggestion in *United States v. Nash,* 76 F.3d 282 (9th Cir.1996), to the contrary.

5. The comment to the Model Instruction said that "materiality of a false declaration is ... a question of law for the trial court to determine ... and need not be submitted to the jury."

to process it in *Olano* "forfeited error" (or "invited error") terms is manifestly wrong.

■ Furthermore, the heightened standard of review suggested by the government is at odds with *Griffith* which "instructs" us (as a "lower court") "to apply new rules retroactively to cases not yet final." 479 U.S. at 323, 107 S.Ct. at 713. Such mandatory language is flatly inconsistent with Rule 52(b) *Olano* plain error, notice of which by an appellate court is only discretionary:

Rule 52(b) is permissive, not mandatory. If the forfeited error is "plain" and "affect[s] substantial rights," the Court of Appeals has authority to order correction, but is not required to do so. The language of the Rule ("may be noticed"), the nature of forfeiture, and the established appellate practice that Congress intended to continue, all point to this conclusion. "[I]n criminal cases, where the life, or as in this case the liberty, of the defendant is at stake, the courts of the United States, in the exercise of sound discretion, may notice [forfeited error]."

*Olano,* 507 U.S. at 735–36, 113 S.Ct. at 1778 (quoting *Sykes v. United States,* 204 F. 909, 913–14 (8th Cir.1913)).

The approach we take in this case reaffirms our statement in *Yang* that we review under these special circumstances not for plain error, but only for error under Rule 52(a). Our mode of analysis is akin to the *Griffith*-oriented approach in *United States v. Mkhsian,* 5 F.3d 1306 (9th Cir.1993), a post-*Olano* case. In *Mkhsian,* we permitted a non-objecting defendant to benefit from a sea-change in the law, and we did not require him to satisfy the *Olano* standards. We did so based on *Griffith,* and we looked only for error as controlled by Rule 52(a). *Id.* at 1311.[6]

6. We had used the same approach before *Olano* in *United States v. Montoya,* 945 F.2d 1068 (9th Cir.1991). Citing *Griffith,* we said, "Although *McCormick* [v. *United States,* 500 U.S. 257, 111 S.Ct. 1807, 114 L.Ed.2d 307 (1991)] was decided after the jury verdict and thus not available to the district judge when he instructed the jury, we must apply the *McCormick* standards on appeal"; and the panel then did, reversing and remanding on the affected counts. The *Montoya* opinion is

In the main, we conclude that *Olano* in these circumstances is simply inapposite.[7] As explained, *Olano* deals with Rule 52(b) and the concept of forfeiture, a concept which does not fit in this case. Moreover, *Olano* did not involve a situation where a new rule had intervened in the adjudicatory process, making a "clear break" with the past. Where, as here, a defendant faced with a solid wall of authority endorsing a jury instruction acquiesces in or fails to object to it, that defendant is entitled on appeal to the benefit of the new rule without being held to plain error standards.

### C. Rule 52(a) Error

The question we must now answer is whether the processing of the materiality element in this case requires reversal, or not, a question we address in the general context of Rule 52(a): "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." We note also that because the instructional error here is of constitutional dimension, to be disregarded it must be harmless beyond a reasonable doubt.

On remand from the Supreme Court, we noted in *Olano III* that:

> [U]nder Rule 52(a), most error constitutes "'trial error'-error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." ... Some error is not susceptible to harmless error analysis and is per se prejudicial. Such error consists of "structural defects in the constitution of the trial mechanism.... [Such] constitutional deprivations [are] structural defect[s] affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself."

*United States v. Olano*, 62 F.3d 1180, 1188–89 (9th Cir.1995) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 307–10, 111 S.Ct. 1246, 1263–65, 113 L.Ed.2d 302 (1991)).

In *Gaudin*, we held that the error inherent in instructing a jury that an element of the crime charged was established as a matter of law could not be harmless because it was "structural." We said that "[w]hen proof of an element has been completely removed from the jury's determination, there can be no inquiry into what evidence the jury considered to establish that element because the jury was precluded from considering whether the element existed at all." 28 F.3d at 951. Nevertheless, in *Roy v. Gomez*, 81 F.3d 863 (9th Cir.1996) (en banc), we subsequently identified a distinction between cases like *Gaudin* in which "a court instructs the jury that an element of the crime has been established as a matter of law," and cases like Keys's in which the trial court "simply fails to alert the jurors they must consider it." *Id.* at 866. In the latter circumstance, we allowed that

> Even though an element of the offense is not specifically mentioned, it remains possible the jury made the necessary finding. Review for harmless error is appropriate, but it is the type of review discussed in *Carella [v. California*, 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989).] That is, the omission is harmless only if review of the facts found by the jury establishes [beyond a reasonable doubt] that the jury *necessarily* found the omitted element.

*Id.* at 867 (emphasis in original). Thus, although the manner in which the materiality element was processed in this case is quite similar to the error in *Gaudin*, we apply the *Carella* harmless error test as explained in *Roy*. The state has the burden of showing that the error was harmless beyond a reasonable doubt. *Id.* at 868 ("On direct appeal,

---

notable also for its absence of any mention or analysis of plain error.

Any suggestion in *U.S. v. Lessard*, 17 F.3d 303, 305 (9th Cir.1994), or *United States v. Sterner*, 23 F.3d 250 (9th Cir.1994), that we applied "plain error" review in *Mkhsian* is erroneous. To the extent that *Lessard* and *Sterner* suggest a different approach to this issue, they are disapproved.

7. We are aware that our analysis differs from cases decided in other circuits, but we are not persuaded that their approach is correct. *See, e.g., United States v. Retos*, 25 F.3d 1220, 1228–33 (3d Cir.1994); *United States v. Viola*, 35 F.3d 37, 41–43 (2d Cir.1994); *United States v. Ross*, 77 F.3d 1525 (7th Cir.1996); *United States v. Kramer*, 73 F.3d 1067 (11th Cir.1996).

relief is granted for constitutional error unless the state demonstrates the error was harmless beyond a reasonable doubt.").

■ The *Carella* harmless error test is satisfied "*only* if the reviewing court can tell what the jury actually found, [because] *only then* can the court conclude 'beyond a reasonable doubt' ... that the jury found the facts necessary to support the conviction." *Id.* at 868 (quoting *Carella*, 491 U.S. at 271, 109 S.Ct. at 2424) (emphasis added) (citation omitted). As we explained in *Roy:*

> It was for the jury, not the judges who have reviewed the case, to determine which interpretation of the evidence was correct. We are not free to evaluate the evidence and postulate what the jury would have found had it been properly instructed. "[T]he question is not whether guilt may be spelt out of a record, but whether guilt *has been found by a jury* according to the procedure and standards appropriate for criminal trials."

*Id.* at 867 (quoting *Carella*, 491 U.S. at 269, 109 S.Ct. at 2422) (emphasis added in *Roy* ). If a reviewing court cannot tell what the jury actually found, because there are no findings from which a reviewing court could conclude that the jury necessarily found the omitted element, then the *Carella* harmless error analysis ends and reversal is required. *Id.* at 868.

Looking at the record and in particular the whole of the instructions given to the jury, we note that the only reference to materiality made to the jury was in connection with the court's statement of the charge against him:

> Count One of the indictment charges that defendant Michael Curtis Keys violated Title 18, United States Code, Section 1623, which provides in pertinent part as follows: "Whoever under oath ... in any proceeding before or ancillary to any court of the United States knowingly makes a false *material* declaration is guilty of an offense against the United States."

(emphasis added). Immediately after this statement of the offense, the court-as set out earlier in this opinion-identified the specific elements of the offense required to be proved by the government beyond reasonable doubt. Not surprisingly, materiality was not one of

them. Given these factors, we are certain only that the jury found that (1) Keys testified under oath in district court, (2) his testimony was false, and (3) he knew it was false. In making such findings either individually or collectively, the jury would not necessarily have had to find that the false testimony in question was material to the issues under consideration, especially given the lack of instructional guidance on the meaning of materiality. Thus, the *Carella* harmless error test for constitutional instructional defects cannot be satisfied, the error manifestly affects substantial rights, and Keys is entitled to a new trial.

## IV

### Conclusion

Changing the rules after the event and requiring a second trial is understandably troublesome, but a trial is not a game, and the Constitution is not a set of game rules. The Constitution is a solemn promise that the people of this nation have made to each other that neither life nor liberty shall be taken by our government without faithful adherence to certain basic principles. As Justice Scalia observed in *Carella*,

> The constitutional right to a jury trial embodies "a profound judgment about the way in which law should be enforced and justice administered." It is a structural guarantee that "reflect[s] a fundamental decision about the exercise of official power—a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges." A defendant may assuredly insist upon observance of this guarantee even when the evidence against him is so overwhelming as to establish guilt beyond a reasonable doubt. That is why the Court has found it constitutionally impermissible for a judge to direct a verdict for the state.

491 U.S. at 268, 109 S.Ct. at 2422 (Scalia, J., concurring); *Gaudin*, 28 F.3d at 946–47 (quoting *Carella*, 491 U.S. at 268, 109 S.Ct. at 2422).

Our fundamental principles are subject to refinement and reinterpretation as we live and learn from experience. As distasteful as

it may be for both the government and the defendant to start over, the fate of a single trial pales in comparison to the imperative of keeping faith with the charter of our collective existence.

Accordingly, because the record demonstrates that the jury did not determine the materiality of the alleged false declaration, the judgment of conviction is defective no matter how strong the evidence of guilt may be. We reverse and remand for a new trial.[8]

KLEINFELD, Circuit Judge, with whom BROWNING and LEAVY, Circuit Judges, join, dissenting:

I respectfully dissent.

Our decision today puts us at odds with eight other circuits. We are the only circuit to have resolved this issue as we now have. Our original panel decision, *United States v. Keys*, 67 F.3d 801 (9th Cir.1995), followed the similar approach in two other circuits. Six other circuits have since gone the same way. This national uniformity has been shattered by today's different approach. We got it right the first time.

Though hypertechnical in form, the question we resolve today has considerable practical importance. Two recent changes of law, for example, will require an enormous number of retrials under today's decision. One makes materiality in perjury and false statement cases an element to be submitted to the jury. *See United States v. Gaudin*, — U.S. —, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). The other generally limits "use" of a firearm during and in relation to certain crimes to "active employment." *See Bailey v. United States*, — U.S. —, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Requiring new trials after a long delay inevitably means many guilty people will go free, because witnesses will be unavailable, evidence will be lost, or surprise which exposed perjury (as happened

to Keys) will be gone. Even where the retrials produce accurate results consistent with the original trials, much will be lost. The courts, jurors, lawyers and witnesses will have wasted their scarce time retrying cases in which guilt had already been fairly and accurately established in an earlier trial.

Here is the body of authority with which we today set up an intercircuit conflict: *United States v. Webster*, 84 F.3d 1056 (8th Cir.1996); *United States v. David*, 83 F.3d 638 (4th Cir.1996) (citing *Keys*); *United States v. Randazzo*, 80 F.3d 623 (1st Cir. 1996) (citing *Keys*); *United States v. Ross*, 77 F.3d 1525 (7th Cir.1996) (citing *Keys*); *United States v. Allen*, 76 F.3d 1348 (5th Cir.1996) (citing *Keys*); *United States v. Kramer*, 73 F.3d 1067 (11th Cir.1996) (citing *Keys*); *United States v. Viola*, 35 F.3d 37 (2d Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995) (applying plain error review to jury instructions where supervening authority made instructions error pending appeal); *United States v. Retos*, 25 F.3d 1220 (3rd Cir.1994) (refusing to adopt per se rule that omission of an essential element (*Gaudin* error) constitutes plain error requiring reversal).[1]

These other eight circuits have applied Rule 52(b), as construed by *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), to omission of the materiality element in perjury and false statement jury instructions. They are on all fours with today's case. Ironically, five other circuits have cited our original *Keys* decision and applied the same reasoning, and only the Ninth Circuit (today) has rejected the earlier Ninth Circuit decision. Our rejection of our earlier decision needlessly puts stability and predictability of the law in our circuit in doubt.

Analysis must begin with the text of Rule 52:

**8.** Our holding renders moot Key's other claims.

**1.** The District of Columbia Circuit has articulated a "supervening-decision doctrine." Like our panel opinion in *Keys*, and our "solid wall of circuit authority" doctrine, this treats a post-judgment "supervening decision" as justification for treating a decision correct when made as "plain error." If failure to object is excused by

the supervening-decision doctrine, then apparently *Olano* analysis would be applied. *See United States v. Washington*, 12 F.3d 1128, 1138 (D.C.Cir.) *cert. denied*, — U.S. —, 115 S.Ct. 98, 130 L.Ed.2d 47 (1994); *United States v. Rhodes*, 62 F.3d 1449, 1452 (D.C.Cir.1995), *cert. granted & judgment vacated*, — U.S. —, 116 S.Ct. 1562, 134 L.Ed.2d 662 (1996).

(a) **Harmless Error.** Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

(b) **Plain Error.** Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

Fed.R.Crim.P. 52. The question in this case is what to do about a jury instruction in these circumstances: (1) it was correct when given; (2) the defendant requested it; (3) it became defective in light of a subsequent decision; (4) the defendant has not shown that a proper instruction would have made any difference to the outcome. The correct answer is that nothing should be done about it. That answer is compelled by the text of Rule 52 and by *Olano*.

When the Supreme Court reversed us in *Olano*, it gave clear instructions on how appellate courts should deal with errors and defects which were not brought to the attention of the trial court. The Court inferred from the text of Rule 52 that we are not permitted to take notice of errors and defects not brought to the attention of the trial court unless three conditions are met: (1) there must in fact be error or defect; (2) the error must be "plain" and (3) the error must affect "substantial rights." 507 U.S. at 733–34, 113 S.Ct. at 1777.

"If the forfeited error is plain and affects substantial rights, the Court of Appeals has authority to order correction, but is not required to do so." *Id.* at 735, 113 S.Ct. at 1778. If these conditions are met, appellate courts must exercise discretion whether to correct the error, under the criteria for the exercise of discretion set out in *Olano*. *Id.* at 736, 113 S.Ct. at 1778–79. Appellate courts may correct error meeting the conditions only if one of two criteria for the exercise of discretion is met. One is "miscarriage of justice," that is, conviction of an innocent person. *Id.* Keys has not attempted to argue on appeal that he is innocent.

The alternative *Olano* ground for the exercise of discretion to correct such error is that it "seriously affects the fairness, integrity or reputation of judicial proceedings." *Id.* That standard is not met in the case at bar. Keys

was given a fair trial under the law as it existed at the time. "Reputation of judicial proceedings" does not suffer from affirming a conviction under a jury instruction correct when given, but defective in light of a change in the law, if the defect would have made no difference to the outcome of the particular case. What really hurts the "reputation of judicial proceedings" is vacating a criminal conviction because of what laymen properly call a "technicality," that is, a technical defect which made no practical difference in the particular case.

"Integrity ... of judicial proceedings" means their reliability as a means of distinguishing the innocent from the guilty. "[T]he central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence ..." *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986). Omitting the element of materiality from Keys' jury instruction had no bearing on reliability, because materiality was indisputable and not at issue.

The word "materiality" means that "the statement must have a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it was addressed." *Gaudin*, —— U.S. at ——, 115 S.Ct. at 2313 (internal quotation marks omitted). Keys' defense was that he did not do it, not that what he did was immaterial. He claimed he had not written the kite, did not send it, and that the former DEA agent was not the person to whom the kite was addressed. If the jury in the DEA agent's trial had believed Keys, acquittal would have been more likely. Whether the jury in that case believed the prosecutor's insinuation that Keys had sent the kite, or Keys' denial, would have a natural tendency to influence whether the jury believed Keys.

Keys had an opportunity to argue materiality in his perjury case, albeit to the judge rather than the jury. The prosecutor asked the judge if he was making a determination, and the judge said "As to materiality, definitely. The court finds that it is material." Defense counsel offered no argument to the contrary, doubtless because she did not want

to squander her credibility with the judge on a frivolous argument. This case should be distinguished from *Gaudin* on the facts as well as on the difference between what the judge told the jury in *Gaudin* and in *Roy v. Gomez*, 81 F.3d 863 (9th Cir.1996) (en banc). In *Gaudin*, "there was a serious factual question for the jury as to whether a block checked on line 303 of the HUD–1 Settlement Statement could have a tendency to influence the agency's decision to secure the loan." *United States v. Gaudin*, 28 F.3d 943, 952 (9th Cir.1994). That is, materiality was seriously at issue in *Gaudin*, and a jury might well have decided that the false statement was immaterial.

The fork in the road where the majority goes the wrong way is in the choice whether to use Rule 52(a) or 52(b). The majority does not dispute the analysis above, under Rule 52(b). Rather, it reasons that Rule 52(a) applies under *Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987), and the cases relieving a party from failure to object when a "solid wall of circuit authority" would have made objection futile. *See People of Territory of Guam v. Yang*, 850 F.2d 507, 512 n. 8 (9th Cir.1988); *United States v. Scott*, 425 F.2d 55, 57–58 (9th Cir.1970). The majority's analysis in this critical respect is textually and logically mistaken. The mistake leads to vacating a criminal conviction on an immaterial technicality.

Rule 52(a) requires appellate courts to disregard any "error, defect, irregularity or variance" if the error is "harmless," in the sense that it "does not affect substantial rights." Arguably omission of the materiality element in Keys' jury instructions should be classified as harmless error under subsection (a), but this is not the critical divide between my view and the majority's.

Burden of persuasion differs critically between subsections (a) and (b). Under subsection (a), the prosecution has "the burden of showing the absence of prejudice," *Olano*, 507 U.S. at 741, 113 S.Ct. at 1781, and "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. State of Califor-*

*nia*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). Subsection (b), by contrast, imposes the burden on the defendant:

It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. In most cases, the Court of Appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial.... This burden-shifting is dictated by a subtle but important difference in language between the two parts of Rule 52: while Rule 52(a) precludes error-correction only if the error "does *not* affect substantial rights" ... Rule 52(b) authorizes no remedy unless the error *does* "affec[t] substantial rights."

*Olano*, 507 U.S. at 734–35, 113 S.Ct. at 1778 (citations omitted; brackets in original). The error does not "affect substantial rights" just because the defendant had a substantial right to a different jury instruction. The phrase generally means that the error "must have affected the *outcome* of the District Court proceedings." *Id.* at 734, 113 S.Ct. at 1778 (emphasis added). Keys has not shown why a jury might well have acquitted him had it been told to determine whether his lie about the kite was material. Therefore the choice between subsections (a) and (b) of Rule 52 determines the outcome of today's decision.

The choice between subsections (a) and (b) is compelled by the text of the rule, and supported by *Olano* and all the other circuits which have considered this question. Subsection (b) says it applies to errors and defects which "were not brought to the attention of the court." Keys did not bring absence of the materiality element in the instruction "to the attention of the court." Therefore Rule 52(b) applies. That should be the end of the case.

*Griffith v. Kentucky* has no bearing on the choice between subsections (a) and (b). Under *Griffith*, Keys is entitled to the benefit of *Gaudin* because that decision came down while Keys' case was still pending on direct review. Evaluating the defect in his jury instruction under subsection (b) gives him the benefit of *Gaudin*. The choice between subsections (a) and (b) did not arise in *Griffith*. In *Griffith*, defense counsel had objected to racially based peremptory challenges to

jurors, even though *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), had not yet come down.

The majority reasons from our "solid wall of circuit authority" cases, *Scott* and *Yang*, that because there was at the time no error, and counsel properly did not object, that Rule 52(a) applies. But the conclusion does not follow from the premises, logically or practically.

Our "solid wall of circuit authority" doctrine was an exception to the general rule that invited error was not reviewable at all, except in "exceptional situation[s] where reversal is necessary to preserve the integrity of the judicial process or prevent a miscarriage of justice." *People of the Territory of Guam v. Alvarez*, 763 F.2d 1036, 1038 (9th Cir.1985). *See also United States v. Hernandez*, 27 F.3d 1403, 1407 (9th Cir.1994); *Wilson v. Lindler*, 995 F.2d 1256, 1262 (4th Cir.1993); *United States v. Ahmad*, 974 F.2d 1163, 1164 (9th Cir.1992); *United States v. Schaff*, 948 F.2d 501, 506 (9th Cir.1991); *cf. United States v. Baldwin*, 987 F.2d 1432, 1437 (9th Cir.1993); *United States v. Benny*, 786 F.2d 1410, 1416 (9th Cir.1986) (when defendants themselves propose the instruction, "review is totally barred"); *United States v. Katzman*, 461 F.2d 655, 656 (9th Cir.1972). Keys' attorney proposed the defective instruction, and the judge gave it. Our contemporaneous decision in *United States v. Perez*, 67 F.3d 1371 (9th Cir.1995) (en banc), modifies our past invited error doctrine, but because Keys is entitled to raise the invited defect in the instruction regardless, under the "solid wall of circuit authority" doctrine, the *Perez* modification makes no difference to his case.

*Griffith* gives Keys another benefit as well. It turns an instruction which was not defective when given into "plain" error or defect.

But the defect in the jury instruction was still "not brought to the attention of the court." *See* Fed.R.Crim.P. 52(b). It was "forfeited error" in the terminology of *Olano*, 507 U.S. at 732, 113 S.Ct. at 1776–77, because there was no timely assertion of the right to a materiality instruction in the district court. Subsection (a) of Rule 52 applies where the defense counsel has brought the problem to the attention of the court, and the court has erred anyway. Subsection (b) applies where the defect was "not brought to the attention of the court." This difference allows a trial judge to give the lawyers some room to shape their own cases, except where error is "plain," instead of ignoring the lawyers' decisions whether to object and concentrating only on the judge's independent research into technical "error."

The majority is concerned that it is unfair to require Keys to show that the defect affected substantial rights, because there was no error and he had no reason to object. That is incorrect, because forfeited error is still reviewable. "Mere forfeiture, as opposed to waiver, does not extinguish an 'error' under Rule 52(b)." *Olano*, 507 U.S. at 733, 113 S.Ct. at 1777. Nor does it matter that there was no "error" at the time the judge instructed the jury. Rule 52(b) applies to "errors or defects," not just "errors." This language enables an appellate court to reverse for a defect which was not an error at the time. The absence of any error by the trial judge, and the subsequent change of law, cannot elevate intensity of appellate review from subsection (b) to subsection (a), where the defect was "not brought to the attention of the court." There is but "a single category of forfeited-but-reversible error." *Olano*, 507 U.S. at 732, 113 S.Ct. at 1776.

Nor is it unfair to require Keys to show that absence of the materiality element mattered in his case, as a condition of getting a new trial. It is unfair to the rest of society to vacate a conviction because of a defect which was not an error when made, and which the defendant has not shown to have affected his substantial rights. Wigmore explains that the orthodox English rule held that error in the analogous situation of admitting or excluding evidence "was not a sufficient ground for setting aside the verdict and ordering a new trial unless upon all the evidence it appeared to the judges that the truth had thereby not been reached." 1 Wigmore on Evidence § 21 at 884 (Tillers rev.1983). An 1830 case in the Court of Exchequer created a new rule that "error of ruling created per se for the excepting and

defeated party a right to a new trial." *Id.* at 887. Wigmore says that this rule has been reformed away by legislation, but "[t]he fetters of the pernicious rule of the Exchequer were not forged by mere precedent but by professional habit and tendency." *Id.* at 893. Our court made a failed attempt to revive the "pernicious rule of the Exchequer" in *United States v. Olano*, 934 F.2d 1425 (9th Cir.1991), and does it again today. The language of Rule 52 is one of the ways that legislatures have attempted to reform away the Exchequer rule. Wigmore at 894, n. 12. As Wigmore put it, "the absurd and provoking technicality" of reversals for defects not bearing on the truth of the verdict are why "a desperate criminal may hope to tire out all endeavors to do justice on him." *Id.* at 891.

Fairness to Keys is achieved by letting him bring to an appellate court's attention a defect in a jury instruction, even though it was correct when given and even though Keys himself requested it. Fairness to the rest of society is achieved by requiring Keys to show, as a condition of getting his conviction vacated, that the defect affected substantial rights.

Here is what we should do, in cases of unobjected to jury instructions correct when made, but plainly incorrect in light of a change of law while appeal was pending. We should read the briefs and relevant record excerpts and decide whether there was a "serious factual question," *Gaudin*, 28 F.3d at 952, such that, had the jury been instructed under the law as changed, a reasonable jury might well have acquitted. If so, we should vacate the conviction so that the defendant gets a new trial. But if, in the particular case, it has not been shown that the new instruction would have made a difference, we should let the jury's determination of guilt stand. Thus, under my analysis, if a defendant checked the wrong box on a loan application, and the jury might well have decided that the loan would have been insured anyway, as in *Gaudin*, he should get a new trial. If a drug dealer indisputably carried a gun to a drug sale, and did not object to a jury instruction which included mere availability as well as active use and carrying of a firearm, he should not get a new trial despite the *Bailey* defect. A reasonable jury would have convicted him of carrying regardless of the "use" language. Most often, criminal jury trials present two competing factual scenarios, or one factual scenario explained by two competing theories. This analysis is a practical way consistent with *Olano* and Rule 52(b) to avoid an appellate result which wastes the time and rejects the judgment of the jury which returned a perfectly reasonable verdict on the facts of the case.

I cannot agree with the majority's claim that application of subsection (b) is a "double-barreled message to counsel: (1) do not rely on our opinions; and (2) object to everything...." Our law is not so unstable that it commonly changes in relevant ways while cases are pending on appeal. As for objecting to everything, if a lawyer does that, his voice becomes mere background noise which a trial judge ignores. Good lawyers preserve their credibility with the judge and jury by limiting their objections to those for which there is some legal basis, and which matter to the case. If there is a subsequent change of law while the case is pending on appeal, and the lawyer did not object, he can still obtain a reversal under Rule 52(b) if the defect mattered to the case.

Suppose in Keys' case that the jury had been instructed that they could not convict unless they found not only that Keys had lied, but also that his lie was material. There is no reason to doubt that the verdict would have been the same. Keys had no materiality argument which could be made on the facts of his case, so the jury would have reached the same result had it been given a materiality instruction. Then why should Keys have his conviction vacated because the materiality instruction was not given? Considering whether the defect would have mattered to the jury's decision does not usurp the jury function, because it argues for letting the jury verdict stand, instead of setting it aside because of a technical judicial cavil. *Id.* at 890. The "affecting substantial rights" language of Rule 52(b) is an appellate standard, not a reversal of the burden of proof at trial, and it applies only to convicted criminals who are presumed guilty because they have been found guilty at trial.

It is unfair to society to vacate a criminal conviction on account of a defect which was consistent with the law at the time, consistent with what the parties asked the trial court to do, and which made no practical difference to the case.